## Anthracite Trust Company Case.

Argued March 6, 1944. Before KELLER, P. J., BALD-RIGE, RHODES, HIRT, KENWORTHEY, RENO and JAMES, JJ.

*J. Julius Levy*, with him *John W. Lord, Jr.*, Special Deputy Attorney General, and *Orville Brown*, Deputy Attorney General, and *James H. Duff*, Attorney General, for appellant.

*John Memolo*, for appellee.

OPINION BY KELLER, P. J., April 11, 1944:

This matter was correctly decided in the court below.

The appellee, Chris Colovos, was a depositor and borrower of Anthracite Trust Company of Scranton, Pa., hereinafter called Anthracite.

He gave his promissory note to Anthracite for $4,000, containing, inter alia, the following clause: "Having deposited collateral security for the payment of this or any other liability or liabilities to said holder hereof, due or to become due, or that may be hereafter contracted, the following property, viz:

Bond & Mtg."

The bond and mortgage given by Colovos to Anthracite as collateral security for the above note were dated March 2, 1927, and were in the sum of $4,000, the mortgage covering a two-story frame building used for a store and dwelling. To secure Anthracite as mortgagee, the mortgage provided for the insurance of said building against fire, and the policies were issued with a clause making loss payable to the mortgagee, in case of fire, as its interest might appear.

On September 10, 1931 Anthracite was taken over by the Secretary of Banking, as Receiver, and from that date it had no right or authority to enter into contracts involving the doing of new business.

On the date Anthracite was taken over by the Secretary of Banking Colovos had several deposit accounts

in said trust company, one amounting to $1,115.82 carried under the name of 'Grill Restaurant', another, amounting to $1,089.25 in the name of Christ Colovos, and still another in the name of 'Grill Hotel and Restaurant Co.' which last one was assigned to the Secretary of Banking and applied with other securities as collateral against other indebtedness of his to Anthracite.

The building on the mortgaged premises was subsequently destroyed or damaged by fire, and the several insurance companies which had insured it, on or about July 12, 1932, paid to Anthracite as mortgagee the sum of $5,777.60, representing the loss by fire to said building, out of which amount the then Secretary of Banking, acting as Receiver of Anthracite, retained $3,903.25 in full payment of the balance due on said $4,000 mortgage and bond and note, and paid over the balance, $1,874.35 to Colovos. The said note was endorsed by the Receiver "Balance of principal unpaid—None", but was not returned to him.

The application of $3,903.25 to the note and mortgage and bond, and the return of $1,874.35 to Colovos was not an error or oversight on the part of the Secretary of Banking, but was in strict accordance with the legal rights of the parties. The insurance on the building covered by the mortgage was security for the mortgage, which in turn, was collateral security for the note of $4,000 and any other liability of Colovos to the holder of the note; but the *insurance itself* was not collateral security for anything but the *mortgage,* and when that was paid out of the insurance money, and applied to the note for $4,000, the Secretary was bound to pay over any balance of insurance money remaining in his hands after the payment of the mortgage to the insured, the owner of the mortgaged premises. The insurance proceeds could be applied to any part of the mortgage debt, principal or interest, up to the full

amount of the mortgage, but to nothing else except by consent of the mortgagor. The mortgage, when given, was security, it is true, not only for the $4,000 note but also for any other liability of the mortgagor to Anthracite, but its limit as security was the amount of the mortgage, which was originally $4,000, reduced to $3,903.25, and when that was paid by the mortgagor either by himself, or by insurance money due him as the insured—but payable to the mortgagee under the terms of the mortgage and the policies of insurance—the *mortgage was paid,* and was no longer collateral security for *any* obligations whatever. The mortgage did not expand beyond the amount fixed as the mortgage debt. *Up to that amount,* it was security not only for the $4,000 note but also for any other liability of the mortgagor, but when paid, either by the mortgagor or by his insurance money, it was discharged and free of further liability. True, Colovos and the Trust Company—if it had been a going concern, carrying on its corporate business—could have agreed that the mortgage should remain as security for other and further obligations of Colovos to the Trust Company, but Anthracite was not a going concern, doing business after September 10, 1931, and it had no power or authority to carry on its corporate business after that date, or make any engagements with Colovos on or after July 12, 1932 extending the security of the mortgage after its payment, for the Trust Company ceased to transact its corporate business when the Secretary of Banking took it over: *Ohio v. Union Trust Co.,* 137 Pa. Superior Ct. 75, 82. And the Secretary of Banking does not allege that acting as Receiver for the Trust Company, *he made any agreement with Colovos* for the extension of such security. One party alone could not extend it.

Hence Colovos was entirely justified in asking, and the court below was warranted in ordering, that the Secretary of Banking, as Receiver of Anthracite, turn

over to Colovos the note, and the mortgage and bond for $4,000, given as collateral security for it, and execute, acknowledge, and deliver to him a satisfaction piece acknowledging payment and satisfaction of the mortgage.

If the Secretary of Banking as Receiver of Anthracite has any other note or obligation of Colovos which has not been paid by the dividends on his deposit account assigned for that purpose, or by other collateral given for its security, he can retain it and endeavor to realize on the other collateral still in his hands, but the note, and mortgage and bond, above referred were paid, and having been paid should be returned to Colovos and marked paid, satisfied and discharged.

The *collateral,* if any, properly remaining in the Receiver's hands as security for an unpaid note, is not affected by Colovos' discharge in bankruptcy or by the statute of limitations. Though a note may be barred by the statute of limitations from recovery in an action against the maker, collateral given as security for its payment may still be applied to the note (*Hartranft's Est.* 153 Pa. 530, 533, 26 A. 104; *Stucker v. Shumaker, Exrx.,* 290 Pa. 348, 355, 139 A. 114) ; unless the collateral itself consists of an obligation on which the statute has run (*First Nat. Bank v. Innes,* 66 Pa. Superior Ct. 425).

Order affirmed at the costs of appellant.