398 A.2d 193

BENEFICIAL CONSUMER DISCOUNT COMPANY, Appellant,

v.

David G. HAMLIN and Linda Hamlin

Superior Court of Pennsylvania.

Argued April 12, 1977.

Decided Feb. 15, 1979.

394

Joseph F. McDonough, Pittsburgh, for appellant.

Carol L. K. Knutson, Pittsburgh, for appellees.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

PRICE, Judge:

This matter came before the court below on appellees' preliminary objection to appellant's complaint in replevin. From an order sustaining appellees' objection alleging lack of subject matter jurisdiction, appellant brings this appeal. For the reasons detailed below, we reverse and remand to the lower court.

The facts giving rise to this appeal are as follows. On March 27, 1975, appellant, Beneficial Consumer Discount Company, extended a loan to appellees. In return for the loan, appellees executed a personal note payable to appellant in the amount of $912.00 and a security agreement granting appellant a security interest in their household furnishings. The loan to appellees was not a purchase-money transaction, and the money was not used by them to purchase the household furnishings. The security agreement provided that appellees were to retain possession of the furnishings unless and until they defaulted in repaying the loan. At some unspecified time, conceded by all to be within the time

requirement for such transactions, appellant filed a financing statement in the Prothonotary's Office of Allegheny County recording its security interest in the furnishings.[1] Again at some unspecified time, appellees became delinquent in the repayment of the loan.

On January 23, 1976, appellees filed voluntary petitions in bankruptcy in the United States District Court for the Western District of Pennsylvania (BK 76–73, BK 76–74). In schedule A–2 of their petitions, they listed appellant as one of their creditors and noted their indebtedness to appellant in the amount of $760.87. In additional schedules, appellees listed their assets as consisting entirely of their household furnishings, valued at $380.00, which had been pledged to appellant as security for the loan. In accordance with section 6 of the Bankruptcy Act (11 U.S.C. § 24), which permits bankrupts to claim property exempt from bankruptcy proceedings as prescribed by the law of their domicile, *see* Act of April 9, 1849, P.L. 533, § 1, 12 P.S. § 2161 (1967), appellees each claimed exemptions of $190.00 for a total of $380.00, thus claiming their household furnishings as exempt from the bankruptcy proceedings.

Pursuant to section 58 of the Bankruptcy Act (11 U.S.C. § 94), a notice of the first meeting of creditors was mailed to appellant on January 30, 1976. Appellant, however, failed to enter an appearance to present its claim. On April 19, 1976, the bankruptcy judge entered an order discharging appellees' debt to appellant and awarding their household furnishings as their exemption. Appellant did not file objections to the discharge, nor to the grant of exemptions. *See* Bankruptcy Act, section 14b (11 U.S.C. § 32(b)).

Prior to the discharge, appellant made demand upon appellees to relinquish their household furnishings in accordance with the security agreement. Upon appellees' refusal, appellant commenced an action in replevin on April 2, 1976,

---

1. Act of April 6, 1953, P.L. 3, § 9–401, *as amended,* 12A P.S. § 9–401 (1970). *See* Bankruptcy Act § 67a (11 U.S.C. § 107(a)) invalidating those interests that are created within four months of bankruptcy and at a time that the bankrupt is insolvent.

in the Court of Common Pleas of Allegheny County to enforce its security interest. Appellees filed preliminary objections alleging that exclusive jurisdiction reposed with the federal bankruptcy court and that the courts of this Commonwealth were without jurisdiction to entertain the suit in replevin.

On July 11, 1976, the court below entered an order sustaining appellees' preliminary objections. The court held that the bankruptcy court had exclusive jurisdiction to pass upon the discharge of appellees' debts in bankruptcy, and that appellant's failure to file objections to the discharge of its claim precluded it from proceeding in the state forum. By way of dictum, the court held that even if the action could be brought in the courts of this Commonwealth, a recent decision by the Supreme Court of Pennsylvania, *Mayhugh v. Coon,* 460 Pa. 128, 331 A.2d 452 (1975), prevented appellant from enforcing its security interest in property held to be exempt under the Pennsylvania exemption provision. *See* Act of April 9, 1849, *supra.* In *Mayhugh,* the supreme court held that a debtor may not waive the benefits of the property exemption statute. From the grant of appellees' preliminary objections, appellant brings this appeal.

In resolving this appeal, numerous issues are raised. Of primary importance is the question whether the courts of this Commonwealth are invested with jurisdiction to determine the enforceability of appellant's claim, discharged in bankruptcy, in property awarded by a bankruptcy court as appellees' exemption under Pennsylvania law. If answered in the affirmative, we must then determine whether appellant's security interest survives the discharge in bankruptcy, and, if it does, whether its enforcement against property declared as appellees' exemption is contrary to the supreme court pronouncement in *Mayhugh v. Coon, supra.* These issues will be resolved in order.

## I. Subject Matter Jurisdiction

It is a basic tenet of bankruptcy law that the United States district courts are "courts of bankruptcy and are

hereby invested . . . with such jurisdiction . . . to (1) Adjudge persons bankrupt . . . ." Bankruptcy Act, section 2a(1) (11 U.S.C. § 11(a)(1)). In addition to administering bankruptcy proceedings, such courts are empowered to hear all claims against the bankrupt and to "[d]etermine all claims of bankrupts to their exemptions." Bankruptcy Act, section 2a(11) (11 U.S.C. § 11(a)(11)). Therefore, on initial inquiry, it would appear that exclusive jurisdiction to determine all claims and exemptions lies with the bankruptcy courts.

In *Lockwood v. Exchange Bank*, 190 U.S. 294, 23 S.Ct. 751, 47 L.Ed. 1061 (1903), however, the Supreme Court ruled that title to property held to be exempt under the law of the bankrupt's state of domicile remains in the bankrupt and never passes to the jurisdiction of the bankruptcy court. *Cf.* Bankruptcy Act, section 70a (11 U.S.C. § 110(a)). Consequently,

"[i]f creditors claim that the property, while exempt generally, is not exempt from process to enforce their particular debts, they must resort to a state court of competent jurisdiction to enforce payment of their debts out of such property." 1A *Collier on Bankruptcy*, ¶ 6.05 at 813 (Moore, ed. 1978), quoting *Duffy v. Tegeler*, 19 F.2d 305, 308 (8th Cir. 1927) [hereinafter cited as *Collier*].

Thus, while section 2a(11) gives bankruptcy courts jurisdiction to determine a bankrupt's claim to his exempt property, once that determination is made, jurisdiction over the exempt property ceases. While generally criticized by commentators as inconsistent with the purposes of the Bankruptcy Act, *see* 1A *Collier*, ¶ 6.05 at 816–17 and sources cited therein, the above principle was readily acknowledged as the law, at least prior to 1970.

In 1970, Congress amended certain provisions of the Bankruptcy Act to expand the jurisdiction of the bankruptcy courts. Appellees contend that the effect of those amendments is to prevent appellant from enforcing its security interest in appellees' exempt property in the courts of this Commonwealth. We disagree.

To understand the purpose of the 1970 amendments it is necessary to review one group of claims specified in the Bankruptcy Act. Under section 17a of the Act, (11 U.S.C. § 35(a)), Congress created a series of claims that survive a bankruptcy discharge. Although fully within the jurisdiction of the bankruptcy courts and subject to discharge like any other claims, these claims are not discharged based upon considerations of public policy. They fall generally into two categories, those resulting from the status of the claimant (e. g., wage, tax and alimony claims) [2] or those arising from the mala fides of the bankrupt (e. g., claims against the bankrupt for obtaining money or property by fraud or by falsely reporting his financial condition, or claims for willful and malicious injury to the person or property of another).[3] Prior to 1970, the procedure was for the bankruptcy court to enter a general order releasing the bankrupt "from all dischargeable debts." Bankruptcy Form 13–16. A creditor would then initiate its claim in a state court alleging that the claim survived the discharge under section 17a, and the state court would be charged with the task of interpreting whether the claim actually fit within one of the section 17a exceptions. See 1A *Collier,* ¶ 17.28. If so, the claim was not affected by the discharge order, and was enforceable against all property held by the debtor, not just that which was declared exempt under the applicable state statute.

In 1970, Congress amended the Bankruptcy Act, thereby changing the procedure for testing the enforceability of section 17a claims. Under the 1970 amendments the bankruptcy courts are invested with exclusive jurisdiction to determine whether a particular claim falls within one of the section 17a claims arising from the mala fides of the debtor; a failure to present the claim in the bankruptcy court results in a discharge and precludes the creditor from proceeding in a state court to enforce the claim. See Bankruptcy Act, section 17c(2) (11 U.S.C. § 35(c)(2)). In all other instances in

2. *See* Bankruptcy Act, section 17a(1), (3), (5), (6), (7), (11 U.S.C. § 35(a)(1), (3), (5), (6), (7)).

3. *Id.* at section 17a(2), (4), (8) (11 U.S.C. § 35(a)(2), (4), (8)).

which a creditor files suit in a state court to enforce a claim under section 17a, the action may be removed from the state forum if either the creditor or debtor files "an application with the [bankruptcy] court for determination of the dischargeability of [the] debt." *Id.* at section 17c(1) (11 U.S.C. § 35(c)(1)); *see also* Bankruptcy Rule 409. Thus, certain section 17a claims are now exclusively within the jurisdiction of the bankruptcy courts, while all section 17a claims may by discretion be tested there.[4]

This change in procedure for enforcing section 17a claims has prompted one bankruptcy judge (and appellees) to conclude that the 1970 amendments changed the procedure enunciated in *Lockwood* for enforcing *all* creditor's claims in the exempt property of the bankrupt. *See In re Santesse,*

4. The purpose of the 1970 amendments was to correct abuses that had arisen in the enforcement of the section 17a exceptions. As stated, prior to 1970, creditors whose claims had been discharged in bankruptcy would institute suit in a state court alleging that their claim was of the type that survived discharge under section 17a. The most "popular" method for assuring the success of the claim was under the exception for false statements by the bankrupt in reporting his financial condition. Many creditors made their loan applications so complex, that the ordinary debtor was unable to comprehend the application thus making the type of error in completing the form that the survivability of the creditor's claim under section 17a would be assured.

Most debtors, upon receiving the summons in the suit, would notice that the creditor's claim had been discharged in bankruptcy and would therefore ignore the summons; the result was a default judgment in favor of the creditor. At this point, the only recourse for the debtor was to petition the state court to open the judgment and seek an adversary hearing on whether the creditor's claim fell within one of the section 17a exceptions.

As expected, most debtors who had just completed the bankruptcy procedure were without sufficient funds to proceed through the state court process. The result was that the creditor with a default judgment (based upon a claim discharged in bankruptcy) was in a position to coerce the debtor to pay at least part of the judgment to avoid the continued harassment from the creditor. Thus, the 1970 amendments were intended to remedy this abuse by giving the bankruptcy courts jurisdiction to determine whether the claims of the creditor fell within the exceptions enunciated in section 17a, instead of allowing that determination to lie exclusively with the state courts. *See* H.R.Rep. No. 91–1502, 91st Cong., 2d Sess. 2, 4, *reprinted in* 1970 U.S.Code Cong. & Admin.News, p. 4156; *see also* 116 Cong.Rec. 9549 (1970) (Remarks of Rep. Wiggins).

BK 75–652, 653 (D.C.N.J.1975). It is our conclusion, however, that the statutory history of the 1970 amendments is inapposite to this holding. The exemptions under section 17a cover claims that are fully within the jurisdiction of the bankruptcy court from the initial filing of the petition in bankruptcy and could be subject to discharge just like any other claims. The only reason for their continued enforcement after discharge is to implement what Congress perceives as a strong public policy in favor of their survivability. Therefore, while the courts of bankruptcy have original jurisdiction over these claims, the procedure prior to 1970 was for the bankruptcy courts to grant a broad discharge and for the creditor to initiate suit in a state court to determine whether the claim fell into one of the section 17a exceptions. The 1970 amendments merely eliminated this two-step procedure and made the system more efficient by permitting the bankruptcy courts to rule upon the enforcement of claims under section 17a.

In contrast, the exempt property rule enunciated in *Lockwood* declared that courts of bankruptcy were totally without jurisdiction to entertain any claims in the exempt property. *See also* Bankruptcy Act, section 70a (11 U.S.C. § 110(a)). While the 1970 amendments may have modified this doctrine to the extent that a creditor now seeks to enforce a section 17a claim in exempt property, this modification occurs not because Congress was asserting jurisdiction over the exempt property, but because Congress chose to re-assert the jurisdiction of the bankruptcy courts over section 17a claims, a jurisdiction that existed even prior to 1970. There is no indication in either the statutory history or language [5] of the 1970 amendments of an intent by

5. The 1970 amendments added or changed the language in the following sections of the Bankruptcy Act; 2a(12) (11 U.S.C. § 11(a)(12)); 14b, f, g, h, (11 U.S.C. § 32(b), (f), (g), (h)); 15 (11 U.S.C. § 33); 17a(2), (5), (6), (7), (8) (11 U.S.C. § 35(a)(2), (5), (6), (7), (8)); 17b (11 U.S.C. § 35(b)); 17c (11 U.S.C. § 35(c)); 38(4) (11 U.S.C. § 66(4)); 58b (11 U.S.C. § 94(b)). Act of Oct. 19, 1970, P.L. No. 91–467, §§ 1–9, 84 Stat. 990.

Congress to usurp the jurisdiction of the state courts to test other claims in the exempt property. Moreover, with the exception of the *Santesse* case mentioned above, other cases arising subsequent to the 1970 amendments have held that the enforcement of other creditor's claims in the exempt property is a matter that continues to lie in the state courts. *See In re Drake,* BK–1004, 1005 (M.D.Pa.1976); *In re Smith,* 366 F.Supp. 1213 (D.C.Idaho 1973), *citing, Browne v. San Luis Obispo Nat'l Bank,* 462 F.2d 129 (9th Cir. 1972). Thus, it is our conclusion that the 1970 amendments only changed the procedure applicable to the enforcement of section 17a claims, but did not change the procedure enunciated in *Lockwood* for testing other claims of creditors in the exempt property, if those claims arose under sections other than section 17a. Accordingly, since appellant is not seeking to enforce its claim in the exempt property under section 17a, *Lockwood* mandates that the jurisdiction for this action lies with the courts of this Commonwealth.

As alternative arguments, appellees allege that Bankruptcy Rules 403(c) and 701 have changed the procedure whereby creditors may enforce their claims against the exempt property of the debtor. Rule 403 relates generally to the claiming by the bankrupt and the setting aside by the bankruptcy judge of the bankrupt's exempt property. Specifically, Rule 403(c) states, "Any creditor or the bankrupt may file objections to the report [allowing the exemptions] within 15 days after its filing . . . ." According to appellees, this rule prohibits appellant from presenting its claim to the exempt property in the courts of this Commonwealth since it failed to object to the allowance of the exemptions in the bankruptcy proceeding. With this contention, we cannot agree.

The objection process in Rule 403(c) would apply to situations in which a creditor was alleging that the exemption allowed by the trustee was incompatible with the law of the

An examination of these amendments reveals that none of the amended sections deal with the procedure for enforcing a creditor's claim in exempt property.

controlling jurisdiction. If, for example, appellees each possessed assets of $500.00, and the trustee allowed all $1,000.00 as their exemption, this allowance would be a proper issue for resolution under the appeal process of Rule 403(c) since, under Pennsylvania law, a total exemption of only $600.00 would have been proper. *See* Act of April 9, 1849, *supra*. In this case, however, appellant concedes that the exemption was proper under the applicable Pennsylvania law; it merely seeks to enforce its interest in the exempt property by claiming a security interest, the action for which would lie in the lower court under *Lockwood*. *See* 1A *Collier*, ¶ 6.12. Thus, since appellant is not objecting to the allowance of the exemption, it was not bound to follow the procedure in Rule 403(c), and its failure to do so does not preclude it from enforcing its claim in the state forum. *See In re Drake*, *supra*.

Likewise, Rule 701 does not preclude appellant from presenting its claim in the lower court. Rule 701 makes the procedural rules in Part VII of the Bankruptcy Rules applicable to "any proceeding . . . before a bankruptcy judge to . . . (2) determine the validity, priority, or extent of a lien or interest in property . . ." The Advisory Committee's Notes to that rule indicate its limits and state that the procedures apply only when the trustee is in possession of the property subject to the security interest, and the creditor initiates suit to enforce its claim in the property. *See also* 13 *Collier*, ¶ 701.05 at 7–14. Even this exclusive method of lien enforcement terminates, however, when "the property subject to the lien is, with the approval of the court, set apart as exempt . . . ." Bankruptcy Rule 601. Since, under *Lockwood*, the setting aside of appellees' furnishings as their exemption served to sever jurisdiction and possession of the bankruptcy court over the furnishings, Rule 701 did not require appellant to present its claim in the bankruptcy proceeding. Therefore, jurisdiction exists for the courts of this Commonwealth to determine the enforceability of appellant's claim.

## II. Effect of Discharge on Secured Interests

Although the court below was empowered to adjudicate appellant's claim, appellees contend that the claim should be dismissed because the instant replevin action entails a rehearing on the dischargeability of appellant's claim, and that a suit may not be brought to enforce a claim previously discharged in bankruptcy. *See Bankruptcy Act,* section 14f(2) (11 U.S.C. § 32(f)(2)). While appellees are partially correct, their contention is not a complete statement regarding the applicable legal principles.

Under the Bankruptcy Act a discharge in bankruptcy applies to all "personal liabilities." Bankruptcy Act, section 14f (11 U.S.C. § 32(f)). However, all pre-bankruptcy liens are unaffected by the discharge unless specifically invalidated by the Bankruptcy Act.[6] *See 4 Collier,* ¶ 67.-02[7]; 4B *Collier,* ¶ 70–70[1]. In this case, as in most secured transactions, the pledges given by appellees to obtain the loan included both a personal promise, as evidenced by their note, and a lien on their household furnishings, as evidenced by the security agreement. The discharge in bankruptcy only affected appellees' personal liability on the note, while appellant's security interest in the collateral survived. *Cf. Swope v. Turner,* 193 Pa.Super. 217, 163 A.2d 714 (1960); *Anthracite Trust Co. Case,* 154 Pa.Super. 553, 557, 36 A.2d 727, 729 (1944); *Realty Co. v. Gioshio,* 50 Pa.Super. 185, 190–91 (1912). Accordingly, appellant's security interest under Article 9 of the Uniform Commercial Code, since properly perfected, creates a lien, and unless invalidated by the Bankruptcy Act,[7] is unaffected by a bankruptcy dis-

---

6. *See* Bankruptcy Act, sections 60, 67a, 67d, 67f, 70c and 70e (11 U.S.C. §§ 96, 107(a), 107(d), 107(f), 110(c), 110(e)). The Bankruptcy Act does not specifically preserve pre-bankruptcy liens; their continued enforceability is through a negative approach, *i. e.,* only those liens invalidated by sections 60, 67, and 70 are unenforceable. Consequently all "unaffected" liens are impliedly preserved. *See* 4B *Collier,* ¶ 70.70[1].

7. An examination of the record indicates that none of the invalidating provisions mentioned in note 6, *supra,* are applicable to appellant's security interest.

charge, *see Avco Finance Co. v. Erickson,* 132 Ill.App.2d 868, 270 N.E.2d 111 (1971); *cf. In re Dolly Madison Industries, Inc.,* 351 F.Supp. 1038 (E.D.Pa.1972), *aff'd.* 480 F.2d 917 (3d Cir. 1973); *In re Komfo Products Corp.,* 247 F.Supp. 229 (E.D.Pa.1965), and may be enforced in the exempt property of the debtor. *See Capital Finance Corp. v. Reynolds,* 45 Erie 1 (1959) (Laub, J.). Still to be determined is whether the enforcement of such a lien is contrary to the policy of the exemption statute.

### III. Enforceability of Appellant's Security Interest in Appellees' Exempt Property

■ Although appellant's security interest in the exempt property amounts to a lien which survives bankruptcy, appellees contend that the enforcement of that interest contravenes the holding of the supreme court in *Mayhugh v. Coon, supra.* Although the instant appeal is only before this court on preliminary objections raising the issue of subject matter jurisdiction, the court below stated in its opinion that it interprets *Mayhugh* to prohibit the enforcement of appellant's claim in appellees' exempt property. In addition, both appellant and appellees have extensively addressed the issue of *Mayhugh* in their briefs submitted to this court. Accordingly, we deem it necessary to rule upon the applicability of *Mayhugh* to the facts of this case.

In *Mayhugh,* the supreme court ruled with disfavor upon a procedure utilized in Allegheny County whereby creditors would file complaints against defaulting debtors alleging a waiver of the exemption provision of the Act of 1849. In prohibiting such procedure, the supreme court engaged upon an extensive analysis of the policy and purpose of the exemption statute. Thus, the issue for determination is whether the pronouncement in *Mayhugh* is inconsistent with the continued enforcement of appellant's security interest in appellees' personal property pledged as security for a debt when that property has been set aside as appellees' exemption. In resolving this question, it is necessary to look to the history of the Act of 1849.

The earliest cases interpreting the exemption statute involved efforts by the supreme court to define the term "judgments obtained upon contract" to which the Act of 1849 applied. Specifically, the act states as follows:

"In lieu of the property now exempt by law from levy and sale on execution, issued upon any *judgment obtained upon contract* and distress for rent, property to the value of three hundred dollars, exclusive of all wearing apparel of the defendant and his family, and all bibles and school books in use in the family (which shall remain exempted as heretofore), and no more, owned by or in possession of any debtor, shall be exempt from levy and sale on execution or by distress for rent." (emphasis added).

In *Lauck's Appeal,* 24 Pa. 426 (1855), *rev'd in part, Mayhugh v. Coon,* 460 Pa. 128, 138 n. 7, 331 A.2d 452, 457 n. 7 (1975), the court was required to determine whether a bankrupt was entitled to retain his homestead as his exempt property against a creditor who held mechanic's and materialmen's liens on the home for labor and materials supplied in building the home. In ruling that the bankrupt was not entitled to the exemption, the court drew a distinction between judgments in rem and judgments in personam and ruled that a "judgment obtained upon contract" to which the $300.00 exemption applied belonged to the latter but not the former category of judgments. A "judgment obtained upon contract"

"undoubtedly meant judgments on contract of the person against whom they may be executed—that is, judgments against the persons of the parties which may be levied on the goods or lands of the debtor generally, and not judgment *de terris* against specific real estate, which may be executed against such estate, without any contract whatever between the plaintiff and the owner." *Id.* at 428.

Thus, the court held that the exemption applied to judgments generally which a creditor could enforce against any property of the debtor, (*e. g.,* judgments arising from actions in tort, *see Kenyon v. Gould,* 61 Pa. 292 (1869)), but not to judgments in rem, against specific property subject to mechanic's and materialmen's liens.

In later cases, the supreme court maintained this in rem-in personam dichotomy with respect to the definition of "judgments obtained upon contract." In *McAuley's Appeal,* 35 Pa. 209 (1860), and *Gangwere's Appeal,* 36 Pa. 466 (1860), the court held that a debtor could not claim his exemption in property subject to a mortgage interest, even if the mortgage interest was given as a mere pledge as security for a loan. In so holding, the court distinguished between the action of mortgage foreclosure and a mere "judgment obtained upon contract."

"Now, although a mortgage is a contract, and the process authorized to issue thereon results in a judgment, yet, in common parlance, such a judgment is never spoken of as a judgment upon contract, but as a judgment on mortgage. And it is a very peculiar judgment. It simply ascertains of record the breach of some condition on the mortgage, and authorizes a sale of the pledge by a writ of *levari facias.* It has not the lien of ordinary judgments, and it establishes no debt against the mortgagor or terre tenant, for which an execution would issue against his goods and chattels, land and tenements generally." *Gangwere's Appeal, supra,* 36 Pa. at 469–70.

The court went on to explain that the term "judgments obtained upon contract" merely "refers to the well known distinction in pleading between actions arising *ex contractu* and actions sounding in tort, and meant to give debtors the exemption in the former, but not in the latter class of actions." *Id.,* 36 Pa. at 469. This distinction was not, however, intended to encompass all forms of actions, and did not include in rem judgments arising from mortgage foreclosures.

In spite of the foregoing analysis, the supreme court failed to apply a consistent rule to secured interests in pledged personal property when it decided the case of *Hawley v. Hampton,* 160 Pa. 18, 28 A. 471 (1894). While the court in *Gangwere's* ruled that a mortgage interest arising from a pledge of real property was not within the purview of the statute because the enforcement of that interest resulted in

an in rem judgment, the court in *Hawley* held that a creditor's interest arising from a similar pledge of personal property was likewise not within the statute, because such a pledge of personal property entailed an implied waiver of the exemption statute.[8] *Id.*, 160 Pa. at 20, 28 A.2d at 472 (adopting the opinion of the lower court). The court had held as early as 1854 that the debtor's interest arising from the exemption statute was an interest personal to the debtor and could be waived by him. *See Case v. Dunmore*, 23 Pa. 93 (1854). *Hawley* merely extended this principle to find an implied waiver in any pledge of personal property.

Throughout the subsequent years, it was the practice of creditors to include a waiver-of-exemption clause in all loan agreements. *See* Graubert, *Waiver of Debtors' Exemptions in Pennsylvania*, 48 Dick.L.Rev. 130, 132, 138 (1944). Consequently, although there developed an extensive body of law relating to the interpretation of these waiver clauses, *see* Pendleton, *Debtors' Exemption in Pennsylvania*, pp. 88–93 (1886), the continued validity of the implied waiver principle went unchallenged.

In 1973 this court took the first step towards alleviating the imbalance that often exists in consumer loan transactions and ruled that "no waiver may be found unless it is also found that the debtor has voluntarily relinquished a right he knows he has." *Transnational Consumer Discount Co. v. Kefauver*, 224 Pa.Super. 475, 478, 307 A.2d 303, 304 (1973). Indeed, the wisdom of the rule permitting debtors to voluntarily waive the benefits of the exemption statute had been questioned within years of its formulation. Although

---

**8.** Although the court held in *Gangwere's* that a mortgage foreclosure was not akin to the enforcement of a "judgment obtained upon contract" because the former resulted in an in rem judgment while the latter produced an in personam judgment, the court failed to explain why a similar rationale was not applicable to the analogous "foreclosure" action in personal property—replevin. Since replevin is a mixed remedy, sounding partly in rem (to recover the property) and partly in personam (to recover damages for unlawful detention), *see, e. g., Fisher v. Whoollery*, 25 Pa. 197 (1885), the court could have determined that the recovery action was in rem, just as the foreclosure action. Instead, the court developed the implied waiver doctrine mentioned above.

in 1854 the supreme court ruled that a debtor may expressly waive the exemption, *Case v. Dunmore, supra,* eleven years later, the court stated:

> "That he may waive this option under the Act of 1849 . . . has been expressly declared in many cases, in some, however, with regrets expressed that we did not set out with a different construction and hold the privilege or option indefeasible. If it were *res integra*; if, with the experience and observation we have had, we were now for the first to pass upon the question whether debtors could waive their rights under the Act of 1849 or widows theirs under the Act of 14th April 1851, we would be very likely to deny it altogether, and to stick to the statutes as they are written." *Firmstone v. Mack,* 49 Pa. 387, 393 (1865).

With this explanation, the court refused to extend the waiver doctrine to permit laborers to waive the statutory exemption provision applicable to their wages. *See* Act of April 15, 1845, P.L. 459, § 5, 42 P.S. § 886 (1966).

In *O'Nail v. Craig,* 56 Pa. 161 (1867), the supreme court again reviewed the wisdom of its *Dunmore* decision and stated that the express waiver doctrine was a matter of judicial creation rather than a construction mandated by the language of the exemption statute.

> "Had it been determined, immediately after the passage of the Act of April 9th 1849, that a debtor could not deprive himself of that exemption from execution of a portion of his property allowed by the statute, by any agreement made at the time the debt was created, the object of the legislature would doubtless have been better secured. But it having been ruled that the exemption is a mere personal privilege which the debtor can *at any time* waive, and that a waiver once made cannot be retracted, the whole force of the statute is eluded by simply a change in the form of the contract." *Id.* at 162 (emphasis in original).

In *Mayhugh v. Coon,* the supreme court overruled the waiver doctrine that was recognized as early as 1865 as inconsistent with the policy and language of the exemption

statute. In making its decision, however, the court did not restrict its holding to the express waiver rule enunciated in *Case v. Dunmore*. Instead, the court included all waivers, even those arising by implication. "We therefore hold that the provisions of the Act of April 9, 1849, *supra*, may not be waived either expressly or by implication." 460 Pa. at 138, 331 A.2d at 457 (footnote omitted).

In applying this holding to the rationale enunciated in *Hawley*, we are constrained to conclude that the implied waiver previously found in the pledge of personal property is inconsistent with the *Mayhugh* pronouncement. Accordingly, we interpret *Mayhugh* to prohibit appellant from enforcing its security interest in appellees' personal property, pledged as security for a debt, when that personal property has been set aside as appellees' exemption.[9]

This conclusion is further mandated when the implied waiver doctrine is analyzed with respect to the policy and purposes of the exemption statute. In reviewing the legislative intent in enacting the statute, the supreme court in *Mayhugh* reasoned:

"The legislature was obviously concerned with the situation of the debtor and not . . . with the protection of the creditor. This series of enactments reflected a realization that justice to a creditor may well result in oppression to a debtor. Furthermore, it represented an

---

9. Our decision today is not to be read as encompassing all forms of consumer loan transactions. We specifically decline to rule whether the principle enunciated in *McAuley's Appeal, supra* and *Gangwere's Appeal, supra* —that all mortgage interests, whether purchase-money or mere pledge, are outside the ambit of the exemption statute—is still the prevailing law in this Commonwealth. *See Dollar Savings & Loan Assoc. v. Sigler,* 74 D. & C.2d 192 (C.P.Lawr.1976). Likewise, we reserve for future consideration the applicability of our holding to conditional sales transactions, a situation unlike the instant case. In a conditional sales transaction, the property interest of the conditional seller in the exempt property is greater since the seller was the original owner of the property and retains an ownership interest in the property while it is in the possession of the conditional buyer. *See Commonwealth v. Two Ford Trucks,* 185 Pa.Super. 292, 137 A.2d 847 (1958). In contrast, as in the present case, a mere pledge of personal property as security for a loan has been held not to create any ownership interest in the creditor. *Id.*

application [*sic*, appreciation?] that stripping the poor and distressed of all of their worldly possessions in an effort to satisfy an obligation, albeit just, was not in the public interest where the result was to create a condition rendering the debtor and his dependents public charges. . . [I]t is clear that there was an appreciation that the freedom from imprisonment would be meaningless if the debtor could, nevertheless, be stripped of all belongings and deprived of all means of regaining a modicum of economic stability. The policy and object of the legislation in conferring the exemption benefits was to afford the debtor, and his family, the prime necessities of life, and to furnish the insolvent a nucleus with which to begin life anew." 460 Pa. at 134, 331 A.2d at 455.

Applying this policy to the instant case, we are confronted with a situation in which the $380.00 worth of household furnishings awarded to appellees as their exemption represents their only assets "with which to begin life anew." To deprive them of even this meager allowance through a tenuous construction of an implied waiver of the exemption statute is directly contrary to the holding of the supreme court in *Mayhugh v. Coon, supra.*

 In ruling that a debtor may not expressly or impliedly waive the benefits of the exemption statute by pledging his personal property as security for a loan, we are not unmindful of the practical implications of our decision. Although it may be argued that to prohibit appellant from enforcing its security interest in the pledged collateral may countenance an injustice and discourage other creditors from extending aid to distress debtors, the supreme court in *Mayhugh* answered these arguments in this manner:

"The court in *Case [v. Dunmore,]* was concerned with 'a poor man . . . unjustly kept out of money due to him' 23 Pa. at 95. While this may have had some validity during the middle of the 19th century it is clearly inapplicable to the sophisticated lending institutions of this day. Unlike in former years where the debtor and creditor may have been on a relatively equal basis, such is clearly not the case in our current society nor can it be seriously

argued that today's credit industry would be critically jeopardized or curtailed because the creditor was required in all cases to respect the exemptions. The fact that the majority of the states of this nation have embraced the principle that this exemption cannot be waived refutes any argument that such a position would adversely affect the financial sector." 460 Pa. at 137, 331 A.2d at 456 (footnote omitted).

Accordingly, we reverse the order of the court below sustaining appellees' preliminary objection raising the issue of subject matter jurisdiction and remand for proceedings consistent with this opinion.

JACOBS and WATKINS, former President Judges, and HOFFMAN and VAN der VOORT, JJ., did not participate in the consideration or decision of this case.