## CLAPP et al. v. SMITH.

No. 11545—Opinion Filed June 12, 1923.

**1. Exemptions—"Current Wages or Earnings"—Proceeds from Sale of Crops.**

The proceeds derived from the sale of crops produced by a person who is engaged in an agricultural enterprise on his own account are not current wages or earnings for personal or professional services, within the meaning of section 6596, Comp. Stats. 1921.

**2. Usury — Applicability of Statutes — "Loans"—Action by Merchant on Credit Customer's Note.**

Where a merchant sells an article of merchandise to a purchaser on credit, taking the purchaser's note therefor, the merchant is not a lender, or the purchaser a borrower

of money within the meaning of article 6 of chapter 32, Comp. Stats. 1921, and in a suit by the merchant on the note the provisions of section 5101 of said article 6 do not apply.

(Syllabus by Pinkham, C.)

Commissioners' Opinion, Division No. 5.

Error from County Court, Pontotoc County; Orel Busby, Judge.

Action by R. F. Smith against D. Clapp and C. G. Dabbs on a promissory note. Judgment for plaintiff. Defendants appeal. Affirmed.

C. F. Green, for plaintiffs in error.

Cutler & Holt, for defendant in error.

Opinion by PINKHAM, C. This appeal presents error from the county court of Pontotoc county, Okla.

The action was originally instituted in justice of peace court by the defendant in error, R. F. Smith, as plaintiff, against D. Clapp, the plaintiff in error, as defendant; thereafter C. G. Dabbs, one of the plaintiffs in error, was brought into the case by the plaintiff for judgment upon the appeal bond from the justice of peace court.

The parties to this appeal will be referred to as plaintiff and defendant, as they appeared in the trial court.

It appears that on the 23rd day of March, 1918, the plaintiff filed in justice of peace court a bill of particulars alleging that the defendant D. Clapp was justly indebted to the plaintiff in the sum of $62, with interest thereon at ten per cent. per annum from May 18, 1917, for goods, wares, and merchandise, and represented by the promissory note of defendant to plaintiff, a copy of which note was attached to and made a part of the bill of particulars; and that said debt was long past due and unpaid, and that defendant refused to pay the same or any part thereof. The copy of the note made a part of the bill of particulars is as follows:

"$100.00          Ada, Okla., May 18. 1917.

"We, I or either of us, promise to pay to R. F. Smith or order, at his office in Ada, Oklahoma, the sum of one hundred dollars, to become due and payable in installments as follows: Eight dollars to become due June 18, 1917, and eight dollars to become due the 18th of each succeeding month until the whole account of this note is paid in full, for value received, with interest at ten per cent. from maturity until paid. If not paid at maturity I also agree to pay all expenses, including an attorney's fee incurred in collecting, waive notice protest. Payable at the office of R. F. Smith, in Ada, Oklahoma. The express condition of the sale and purchase of the one No. 55 refrigerator, for which this note is given, is such that the title, ownership, or possession does not pass from the said R. F. Smith until this note is paid in. Said R. F. Smith has full power to declare this note due, and take possession of said refrigerator at any time he deems this note insecure, even before the maturity of the same. This being the____of a series of _____notes; and we and each of us severally bind our separate estate for the payment of this debt.

"(Signed)    D. Clapp."

"Witness_____
No._____ Due_____

"Endorsed:

"May 18, cash $30.00.    Jan. 14, cash $8.00.".

The defendant D. Clapp filed an answer, setting up as a defense a failure of consideration, and a cross-action over against plaintiff for certain sums. The case came on for trial before the justice of the peace on April 13, 1918, and resulted in a verdict and judgment against defendant Clapp.

The cause was appealed to the county court by defendant executing a bond with one C. G. Dabbs as surety. The case was tried in the county court on April 28, 1918, and resulted in a verdict for plaintiff and against defendant for the sum of $62, upon which the court rendered judgment.

Thereafter plaintiff filed in the office of the county court an affidavit for garnishment against defendant, naming the Merchants' and Planters' National Bank of Ada as garnishee. Garnishment summons was issued and served upon said bank. Defendant thereafter filed a motion in said cause claiming that the affidavit for garnishment summons was in violation of chapter 188, Sess. Laws 1915, p. 315, and prayed that the garnishment summons withdraw, and the bank be directed to release any and all funds held under said garnishment summons and that the court enter an order canceling the judgment entered against defendant on April 28, 1919.

Before this motion was passed upon by the court, plaintiff filed a notice and motion for judgment against defendant C. G. Dabbs, the surety on the appeal bond from the judgment rendered by the justice of the peace.

Defendant again appeared, and filed a petition praying the court for an order declaring that the plaintiff had forfeited his judgment by reason of the violation of the statute (chapter 188, Sess. Laws 1915, p. 315). Both motions came on for hearing on December 31, 1919, and were overruled by the court.

Defendants, D. Clapp and C. G. Dabbs, duly excepted to the order of the court and gave notice of appeal. Motion for new trial was filed and overruled; defendants appeal.

Counsel for defendants say in their brief:

"This appeal presents only two points or questions____for the court to decide; (1) Did plaintiff, R. F. Smith, forfeit the judgment entered in his favor by the county court on April 28, 1919, for the sum of $62, by reason of the said Smith having violated the provisions of chapter 188 of the 1915 Session Laws of the state of Oklahoma? (2) Did the justice of the peace have authority to file the bill of particulars of plaintiff at the commencement of the action and to issue summons thereon, without the plaintiff having first complied with chapter 20, of the 1916 Session Laws, page 27?"

It is contended by counsel for defendants that, inasmuch as the statute referred to (section 6595, Comp. Stats. 1921) declares "that no process issued in any court to subject such wages or earnings for personal services to satisfy any judgment or obligation shall include more than 25 per cent. of such wages or personal earnings" and that as the process in this case lacks this reservation, the court erred in overruling defendant's motion to forfeit the judgment rendered against him in the county court.

The answer to defendant's first proposition depends upon the question of whether the money so garnished was current wages and earnings for personal services, earned within the last 90 days, within the meaning of section 6596, Comp. Stats. 1921. On the hearing on this motion the court found that said defendant was engaged in an agricultural enterprise during 1919, on his own accord and account, and had in some 30 acres of cotton, and that he gave said bank a mortgage on said crop for money to run the same. In overruling defendant's motion the court held that said money so garnished was not exempt to said defendant from garnishment, and that it was not current wages and earnings for personal or professional services within the last 90 days, within the meaning of the statutes of Oklahoma. The court, however, absolved said garnishee from further liability, inasmuch as it appeared from statements made by counsel for both parties that said bank had the right to apply said money to the debt of defendant at said bank.

Counsel for defendants contend that the fact that the defendant was not a wage earner but was engaged in an agricultural pursuit on his own account, is immaterial; that the proceeds of his crop constituted his earnings, and that the statute relied upon applies in this case.

We cannot agree with that contention. The title of the act found in chapter 188 of the 1915 Session Laws reads as follows:

"An act amending the sixteenth clause of section 3342 and the clause of section 3345 of the R. L. of Okla. 1910 annotated, pertaining to exempt wages."

The language of the statute indicates very clearly the class of persons to whom it applies, and it is clear from the evidence disclosed in the record that the defendant, who was engaged in an agricultural business on his own account, could take no advantage of the exemption provided for in section 6596, Comp. Stats. 1921. The court did not err in overruling defendant's motion.

The second proposition urged by defendant in his brief is that the justice of the peace had no authority to file the bill of particulars and issue summons thereon, and did not have jurisdiction to try the cause, for the reason that plaintiff failed to comply with section 4, chapter 20, of the 1916 Session Laws.

This question is raised for the first time in this court. Defendant says in his brief, "If this matter is a jurisdiction question, then we can urge it in the Supreme Court on an appeal." The section of the statute referred to by defendant in his brief is now section 5101, Comp. Stats. 1921, which provides:

"No suit upon any contract entered into after the passage and approval of this act, of $300 or less, or an action in replevin or to foreclose any mortgage or lien given as security therefor, shall be maintained in courts of this state, and no petition or bill of particulars shall be filed or any process issued where the amount of such sum is $300 or less, unless at the time of filing such suit, there shall be filed with such bill of particulars or petition, an affidavit setting forth that the contract sued on was not made in violation of the interest laws of this state, and that a greater rate of interest than ten per cent. has not been charged, reserved or collected on such contract, or contracts sued upon; Provided, that if upon the trial of any such suit brought upon any note, bill or other evidence of indebtedness of $300 or less, or in replevin or for the foreclosure of any lien given to secure the same, it shall be shown by the evidence that the contract sued upon is usurious and made in violation of the interest laws of this state, said suit shall be dismissed at the cost of the plaintiff."

The above section is an amendment to section 1005, Rev. Laws 1910, and is contained in chapter 20 of the Session Laws of 1916,

the enacting clause, of which section 4 is a part, is as follows:

"An Act relating to the lending of money, amending sec. 1005, R. L. Okla. 1910, providing penalties for the violation of the interest laws of the state and denying the jurisdiction of the courts to enforce usurious contracts in certain cases, providing for reports to the Bank Commissioner by state banks concerning rates of interest; and fixing the procedure for the cancellation of the charters of such banks violating the interest laws of the state."

The entire act of which section 4 is a part relates to the loaning of money. It applies to a class of persons and applies only to the class of persons loaning money, and excludes from its provisions those who sell property on credit and take security therefor. In Cooley's Const. Lim., pp. 480, 481, it is said:

"The Legislature may also deem it desirable to prescribe particular rules for the several occupations and to establish distinctions in the rights, obligations, duties and capacities of citizens. The business of common carriers, for instance, or of bankers, may require special statutory regulations for the general benefit; and it may be a matter of public policy to give laborers in one business a specific lien for their wages, when it would be impracticable and impolitic to do the same for persons engaged in some other employments. If the law be otherwise unobjectionable all that can be required in these cases is, that they be general in their application to the class or locality to which they apply; and they are then public in character, and of their propriety and policy the Legislature must judge."

In the case of Youngblood v. Birmingham Trust & Savings Co., 95 Ala. 521, it is said in the opinion:

"The business of banking is well understood and defined. A chief part of it, in most instances, consists in the lending of money, and this is almost always done by discounting evidences of debt. The opportunities and temptations of persons engaged in it to evade or violate laws against usury are so much greater and more frequent than those of persons not so engaged, as to raise up a necessity for the application of more stringent measures of repression than are necessary in respect to other businesses and persons engaged therein. And it is this consideration which differentiates the business of banking from all others in respect of usury, and furnishes a predicate for such legislation as is embodied in section 4104 for the regulation of banking and bankers, which does not exist as to any other occupations."

It is a matter of common knowledge that the taking of interest much in excess of the legal rate was practiced ordinarily by those who were engaged in the business of making small loans to persons of small means, who by reason of their real or supposed necessities were to some extent compelled to deal with those engaged in making such loans, and it was the intent and purpose of section 4 of the act referred to, to require those who had loaned money of $300 or less to comply with the provisions of the said section at the time of bringing suit against the borrower. We are of the opinion that the act in question was not intended to apply to merchants and others selling goods or other personalty on credit.

It is sufficient to say that section 5101 of article 6, Comp. Stats. 1921, applies only where the relation of lender and borrower of money exists, and has no application to a transaction where a purchaser of goods, wares, and merchandise gives his promissory note as evidence of the debt.

"The defense of usury must be founded on the loan or forbearance of money; if neither of these elements exist in a contract there is no usury, however unconscionable the contract may be." Meaker v. Fiero, 145 N. Y. Court of Appeals, 165.

In the opinion in that case it is said:

"There was no borrowing or lending. There was no loan and in the absence of a loan in law or fact there was no usury."

For reasons stated, the judgment should be affirmed.

By the Court: It is so ordered.