[Civ. No. 50. Appellate Department, Superior Court, Los Angeles County.—December 19, 1929.]

FAY SECURITIES COMPANY, Appellant, v. W. H. JACK BOWERING et al., Respondents.

[1 Cal. Supp. 6.]

D. G. Moore for Appellant.

Harold S. Morrison for Respondents.

SHAW, J.—A writ of attachment against the defendant was levied upon certain money due to him. He claimed that this money was exempt from execution and attachment under subdivision 10 of section 690 of the Code of Civil Procedure. Thereupon, the plaintiff moved the trial court

for an order declaring these funds subject to attachment and execution. After the hearing of this motion the court made an order denying it and directing the release of the money, from which order the plaintiff appeals. ■ No question has been made as to the right of appeal from this order and it seems to be in effect an order discharging an attachment and, therefore, appealable under section 983 of the Code of Civil Procedure. (*Risdon Iron Works* v. *Citizens etc. Co.*, 122 Cal. 94 [68 Am. St. Rep. 25, 54 Pac. 529].)

■ At the hearing of the motion the defendant testified that he was in the trucking business, owning and operating four trucks and employing three men as drivers, besides himself, and that the money attached was due him as the result of the operation of his four trucks and was income from his trucking business.

The provision of the code under which the exemption is claimed is that "the earnings of the judgment debtor for his personal services" shall be exempt from execution under certain conditions not here involved. The question before us is whether the money above mentioned is within this exemption. As far as we are advised, this question has not been decided by any of the appellate courts of this state, but there are numerous decisions on similar questions in other states. On account of the varying language of the exemption statutes, many of these decisions are not in point here. In some of the states, the exemption is of "earnings" without qualifying words. Some decisions, based on such a statute, hold that income arising from a business in which capital or assets are employed may be exempt. There are also a few decisions extending this rule to statutes exempting "earnings from personal services," but only in cases where the services of the debtor are the chief factor in the business. The weight of authority in other states appears to be that the terms "personal earnings" and "earnings for personal services," which are treated in many authorities as synonymous, do not include a debtor's income arising from a business involving other elements of gain than his personal services, such as the employment of capital or assets. (25 Cor. Jur. 68.)

In New York, where the statute exempts "personal earnings," it has been held that the exemption does not include

moneys due from customers to one who retails ice and employs two carts and several men (*Mulford* v. *Gibbs,* 9 App. Div. 490 [41 N. Y. Supp. 273]), or the income of a saloon-keeper from his business (*Prince* v. *Brett,* 21 App. Div. 190 [47 N. Y. Supp. 402]), or money due the judgment debtor for milk produced by him on a rented farm, although he appears to have worked the farm in person (*The Matter of Wyman,* 76 App. Div. 292 [78 N. Y. Supp. 546]), or income of the judgment debtor from an iron working shop in which he hires three men and uses a truck and various machinery (*Schafer* v. *Tyroler,* 94 Misc. Rep. 127 [158 N. Y. Supp. 1090]), on the ground that all these items are the proceeds of a business rather than personal earnings.

In *Shelly* v. *Smith,* 59 Iowa, 455 [13 N. W. 419], it was held that money due from boarders to the keeper of a boarding-house who has several boarders and four employees, besides herself and her daughter, is not exempt, and in *Youst* v. *Willis,* 5 Okl. 170 [49 Pac. 56], the same ruling was made as to money due a hotel-keeper from his guests. The statute in each case was the same as ours, and in the Iowa case the court pointed out that many elements of profit are involved in the keeping of a boarding-house besides the mere personal earnings of the proprietor and his family.

In *Clapp* v. *Smith,* 91 Okl. 84 [216 Pac. 120], it was held that the proceeds of crops grown by a farmer are not exempt as ''current wages or earnings from profession or personal services.''

In *Wineblood* v. *Payne,* 129 Okl. 103 [263 Pac. 669], it was held that one who was driving a truck and hauling gravel at three dollars per load might claim as exempt the reasonable wages of a truck driver, although it was conceded that the earnings of the truck were not exempt and there was nothing in the terms of his employment on which such a segregation could be based. The court cited in support of its decision 25 Corpus Juris, 69, and the rule there stated is:

''Where a debtor's income is derived from a business involving other elements of gain than his personal services, he is entitled to an exemption in as much thereof as is necessary to compensate him for his own personal labor, provided it can be ascertained. But if the amount due the

debtor on account of personal labor cannot be distinguished from the rest, no part of such income will be exempt as 'personal earnings' under the statute.''

Manifestly this decision is not supported by the authority cited and it does not seem to us well grounded in reason. How can it be said with truth that one who hauls goods in a truck by contract for a lump sum per load is receiving any particular portion of the freight charge for his personal services and the remainder for the use of his truck? If this can be done, it would be equally proper to find the rental value of the truck, subtract that from the gross receipts and call the balance the earnings of the driver. Neither process takes account of the expenses of operating the truck, nor does the Oklahoma court point out how those expenses are to be paid, though perhaps it assumes that they will be met out of the balance remaining after taking out the wages of the driver. But suppose a truck operator, in order to meet competition, or by reason of bad judgment, or bad luck, fixes a price for hauling that does not cover the three items of operating expenses, driver's wages, and rental value of the truck. Which is then to be eliminated in apportioning the returns? The mere fact that one of these items is exempt from execution, if ascertained, hardly affords a reason for holding that it must, or can be, segregated from the others for that purpose where no means of segregation appear. It might easily happen that the hauling price would be no more than sufficient to cover the operating expenses. Since a truck could not be operated at all without some provision for the expenses of doing so, it would be more reasonable in such a case to apply the whole returns for that purpose and hold that no earnings for the driver were included therein—which would manifestly be the fact if the operator were solvent and no question of exemption were involved; but the Oklahoma decision would lead to the absurdity of applying the returns in such a case to the earnings of the driver although, in fact, there were no earnings. We think the true rule in this matter is that stated in the passage already quoted from Corpus Juris. That rule purports to be based on the case of *Brainard* v. *Shannon,* 60 Me. 342, and a reading of that case shows the ascertainment of the amount of personal earnings referred to is to be made by some reference to the original

contract for the work and not by mere testimony in court as to the reasonable value of the services. In this Maine case it appeared that the judgment debtor had done work for which it was agreed that he was to have $3 per day for his own wages and an agreed price for other men employed by him on the work. The statute there involved exempted "wages for personal labor," and the court said:

"But this provision does not exempt that which is due to him for the wages or work of other men employed by him, or due to him upon jobs into which other matters besides his personal labor, not capable of being distinguished from it, go to form the price which he is to receive, even though the amount thus due to him at the time of the service of process does not exceed the amount of his wages for his own personal labor during the time specified. . . . The statement is that Turner had been doing work for Shannon, for which he was to have a certain sum *per diem* for his own wages and pay for the work of the men employed by him at a fixed rate. Under such a contract, honestly made without any fraudulent practice or design, we think that the wages of the principal defendant's personal labor may be exempted, so far as it can be ascertained from the accounts what is actually due for such wages."

There are other cases in which the same principles are followed. Applying them to the present case, we find that it nowhere appears that there was any arrangement by which the defendant was employed to render any personal services, or by which any part of the compensation to be paid for trucking was allocated to payment for such services. In the absence of something of this kind, the defendant is not entitled to claim an exemption for any part of that compensation as being his earnings for personal services.

At the hearing of this matter, the court had before it, in addition to defendant's testimony, his affidavit claiming exemption, originally delivered to the marshal, in which he stated merely, in the words of the statute, that the money attached was "earnings due him for his personal services," and that the conditions making such earnings exempt existed. This affidavit, however, cannot be regarded as raising a conflict in the evidence, for it states a mere legal conclusion which can have no weight against the facts stated

by him on which he bases the conclusion. (*Burns* v. *Jackson*, 53 Cal. App. 345–347 [200 Pac. 80].) The burden is upon one claiming an exemption to show by evidence that he is entitled to it. An affidavit, in the language of the statute, is a mere conclusion of law and is not such evidence as will support an order like that made in this case. (*Petrich* v. *Francis*, 83 Cal. App. 72 [256 Pac. 400].)

The order appealed from is reversed.

McLucas, P. J., and Bishop, J., concurred.