**LINGLE STATE BANK OF LINGLE,**
Wyoming, a corporation,
Appellant (Plaintiff),

v.

**Ronald F. PODOLAK and Donna J. Podolak, husband and wife,**
Appellees (Defendants).

No. 86–303.

Supreme Court of Wyoming.

Aug. 5, 1987.

Donald E. Jones of Jones and Graham Law Offices, Torrington, for appellant (plaintiff).

Herbert K. Doby of Elletson & Doby, Cheyenne, for appellees (defendants).

Before BROWN, C.J., and THOMAS, CARDINE, URBIGKIT and MACY, JJ.

URBIGKIT, Justice.

This case presents the debtors' earnings exemption statute, § 1–17–411, W.S.1977, 1986 Cum.Supp., as applied to a farmer's wheat crop sales proceeds upon which a bank, as creditor, had executed. We affirm the trial court exemption allowance.

## FACTS

Ronald and Donna Podolak are family farmers and ranchers in Goshen County, Wyoming. Lingle State Bank (Bank) had made an operation loan to them, and obtained loan security interest in much of their equipment, livestock, and crops. In the fall of 1985, the lender-borrower relationship became severely strained, and litigation ensued in both federal and state courts. The state court proceeding included a replevin action by the Bank to obtain possession of property in which it had a security interest as well as a money judgment. The trial court granted summary judgment for the Bank in that first case, and we affirmed in *Podolak v. Lingle State Bank*, Wyo., 730 P.2d 126 (1986), from which a judgment deficiency remains.

The Podolaks previously grew alfalfa on a 140-acre irrigated circle. In August of 1985, they plowed under the alfalfa and planted wheat, and they employed a neighbor, David Bredthauer, to plow, plant and harvest. When ready to harvest, the Bank executed on the crops, the wheat was sold by agreement of the litigants, and the proceeds paid into court. From these funds, the court paid the neighbor for his labor and services. The deficiency judgment execution originally claimed a total of $41,855 in attached lands, crops and vehicles. After the vehicles were sold in execution sale, a second execution attached crops only.

The Podolaks then filed a claim for exemption pursuant to § 1–17–411, W.S.1977, 1986 Cum.Supp., on remaining crop proceeds of $13,400. The district court held a hearing, and after denying a separately claimed homestead exemption, granted the exemption for one-half the remaining proceeds from the wheat sale, with the balance to be paid to the Bank for deficiency application. At this last stage, we now consider the litigation over the claimed exempt "earning" amount of $6,700.

## ISSUES

This appeal presents two issues:

I. Does the personal earnings exemption statute, § 1–17–411, W.S.1977, 1986 Cum.Supp., operate to exempt from execution one-half of the proceeds of the sale of a farmer's wheat crop?

II. If the exemption is available, does the security agreement covering the wheat crop result in a waiver as to crop proceeds, and alternatively, when the collection process is used, is judgment execution?

## I

The personal earnings exemption statute, Section 1–17–411, W.S.1977, 1986 Cum. Supp., existent in some form in Wyoming for a century (Ch. 60, S.L. of Wyoming 1886), provides:

> "The court may order any property of the judgment debtor or money due him in the hands of either himself or another person, not exempt by law, to be applied toward the satisfaction of a judgment. Upon seizure of his property or money, a judgment debtor may request a hearing pursuant to W.S. 1-17-405(c). One-half (½) of the earnings of the judgment debtor for his personal services rendered within sixty (60) days immediately preceding the levy of execution or levy of attachment, and due and owing at the time of the levy, are exempt when it appears by the debtor's affidavit or otherwise that the earnings are necessary for the use of his family residing in this state supported wholly or in part by his labors."

To determine the application of this statute, we look to the purpose for enactment, which, in *Lafferty v. Sistalla*, 11 Wyo. 360, 72 P. 192 (1903), had been considered:

> " * * * [S]uch statutes are enacted for the purpose of saving debtors and their families from want by reason of misfortune or improvidence, they will be liberal-

ly construed to accomplish that purpose * * *." 72 P. at 193.[1]

In *Pellish Bros. v. Cooper*, 47 Wyo. 480, 38 P.2d 607 (1934), we construed a related exemption statute also enacted to protect debtors, which exempted from execution or attachment tools and implements of a worker's trade of a maximum value of $300 used and kept for the purpose of carrying on a trade or business. Justice Blume, writing for the court, stated that "it should be borne in mind that exemption statutes are construed liberally so as to effect their beneficent purposes." 38 P.2d at 609. See *Penrose v. Stevens*, 100 Colo. 83, 65 P.2d 697 (1937); *Sandberg v. Borstadt*, 48 Colo. 96, 109 P. 419 (1910); *Celco, Inc. of America v. Davis Van Lines, Inc.*, 226 Kan. 366, 598 P.2d 188 (1979); *Anaconda Federal Credit Union No. 4401 v. West*, 157 Mont. 175, 483 P.2d 909 (1971); *Slyfield v. Willard*, 43 Wash. 179, 86 P. 392 (1906). Cf. *Beneficial Finance Co. of Colorado v. Schmuhl*, Colo., 713 P.2d 1294, 1298 (1986), Dubofsky, J. dissenting.

 Appellant contends that the income or earnings from a farming and ranching business are not exempt. To support this claim, the Bank argues that the agricultural economy in Wyoming and across the United States has changed from a labor-based activity to a type of business whereby income is generated from capital. Because this statute exempts "earnings" for "personal services rendered," it is contended that it cannot apply to the operator of a farm or ranch. We do not find the Bank's contention persuasive. There is nothing in the statute to suggest that a person who earns a living by running a business should be treated any differently than one who earns wages. See 31 Am. Jur.2d, Exemptions, §§ 39 and 40, pp. 363–365. Certainly, although a farm or ranch is a business enterprise by definition, the "proprietor" usually renders personal service to obtain earnings.

"It seems clear beyond dispute that the language of the statute, 'earnings of the judgment debtor for his personal services,' is intended to have a broader application than the restrictive meaning of the phrase 'wages of a laborer' * * *." *Russell M. Miller Company v. Givan*, 7 Utah 2d 380, 325 P.2d 908, 909 (1958).

In light of the beneficent purpose and liberal construction to be given exemption statutes, this court concludes that income produced by farming and ranching is a species of earnings to which the legislature intended the earnings exemption statute to apply. The beneficent purposes of this statute includes protecting both debtors who earn wages and debtors who earn income by working for someone else or by running a business for themselves. Under its language, the statutory exemption applies to earnings derived from *personal services*, and we address only that exemption. We specifically do not consider issues relating to tangible chattel or real-property security issues.

The Bank urges us to deny the exemption because the Podolaks hired Bredthauer to plant and harvest. We do not think that his involvement precludes the Podolaks from taking the exemption for the services they performed in raising that wheat, par-

---

1. It is curious that *Lafferty v. Sistalla*, supra, a 1903 case, and the only case construing this statute, has not been subsequently cited. The subject has obviously either been very clear, until now rewritten, or lacking in concern to litigants. Since the date of trial-court decision, § 1–17–411 was amended and completely rewritten by Ch. 198, S.L. of Wyoming 1987, effective May 22, 1987, to the extent that a present comparison is described as impracticable. Newly enacted § 1–15–408 provides formula maximums for garnishment of earnings for personal services; § 1–15–107 provides for exemptions, including:

"(viii) Earnings from personal services as defined by W.S. 1–15–102(a)(vi);"

the appended definition for earnings, § 1–15–102(a)(vi) adds:

"'Earnings' or 'earnings from personal services' means compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, proceeds of any pension or retirement benefits or deferred compensation plan or otherwise."

None of these new statutory provisions applies to the present case, and this case is consequently circumscribed in future application. Appellate evaluation likely will not be delayed for a time similar to the period of 1903 to 1986, as was last encountered.

ticularly so where the Bank's earlier repossession of the Podolaks' equipment was apparently responsible for the Podolaks' inability to otherwise produce the wheat crop with their own equipment.

The record was conflicting as to how much work was performed by the Podolaks. The trial court found

"[t]hat defendants, though certainly relegated to a passive role, when compared to the actual labor and technical skill performed by Mr. Bredthauer in the development of the finished wheat crop, rendered personal services which aided in the production of the crop."

■ When reviewing factual determinations made by the trial court, we will not substitute our view of the facts for that of the trial court if there is substantiated and creditable evidence to support the decision. *Wangler v. Federer*, Wyo., 714 P.2d 1209, 1217 (1986); *Walter v. Moore*, Wyo., 700 P.2d 1219 (1985). There is uncontradicted testimony in the record that Mr. Podolak supervised the progress of the wheat crop and ensured that no wild game trespassed upon it. We will respect the trial court's finding that Mr. Podolak rendered personal services in management and supervision which contributed to the crop production.

The exemption statute exempts only those earnings from personal services rendered *within 60 days* immediately preceding the levy of execution or levy of attachment. In this case the wheat was planted in August of 1985, and harvested in late July of 1986. The sub-issue is presented to determine what portion of the income from the sale of the wheat currently received should be attributed to earnings from services rendered in the last 60 days.

The trial court found that

"* * * [j]ust as a product or process may take more than sixty days in development, so does a wheat crop. In all of these situations, the 'earnings' cannot very readily be apportioned over the total span between inception and completion and I, therefore, believe that the money was earned at the time of sale * * *."

■ We agree, and conclude that the proceeds of a farmer's crop sale were earned at the time of the proceeds receipt. The requirement that the services be rendered within 60 days does not operate to apportion or deny a farmer the exemption for earnings received at the time of sale. To ensure that the earnings exemption provision is not abused, the statute additionally requires the trial court to find that "the earnings are *necessary* for the use of his family." (Emphasis added.)

Consequently, we have no problem with the trial court's analysis that earnings constitute funds received, and this is not to be otherwise defined by us as work done. Logically, crop proceeds are earned when raised and available for sale. Otherwise, the Podolaks earned nothing as they raised the crops, and only the Bank would then earn the proceeds by the fortuitous execution. Burton's Legal Thesaurus, p. 192, teaches that the verb "earn" means to "achieve by continued effort" or to "acquire by service" (labor or performance). See also Black's Law Dictionary, 5th ed. *Hartford Electric Light Co. v. McLaughlin*, 131 Conn. 1, 37 A.2d 361, 363 (1944); *Rambin v. Continental Casualty Company*, La.App., 186 So.2d 861, writ refused 249 La. 578, 187 So.2d 740 (1966); *Shangri-La, Inc. v. State*, 113 N.H. 440, 309 A.2d 285 (1973). The debtors' labor and services in behalf of the ranch enterprise for the preceding 60 days created the contested fund. Although labor was done earlier, it had created no realized earnings. To conclude otherwise, we might be called to prorate a judge's salary against his prior legal education, law practice experience, and training periods from which present earnings are intrinsically premised. Axiomatically, "you got it when you get it."

## II

The Bank urges us to find that the existence of a security agreement covering the crops implies a waiver by the debtor of the statutory exemption. Again, we do not address chattel security issues but only proceeds against which exemption is claimed. We do not find *Beneficial Finance Co. of Colorado v. Schmuhl*, supra, 713 P.2d, involving a loan foreclosure on a

mobile home, to be applicable within the facts presented here.

It is not necessary for us to determine whether the Bank held a valid security interest in the proceeds from the Podolaks' wheat crop. For even if we were to decide that the Bank's security interest was valid, that determination would not operate to defeat the Podolaks' exemption.[2] As a matter of strong public policy in Wyoming, a debtor may not waive the statutory exemption, and we decline to permit the existence of a security agreement to accomplish such a waiver by implication.

Courts in several jurisdictions have held that a debtor cannot by executory contract waive the provisions of the exemption statute. In *Anaconda Federal Credit Union No. 4401 v. West*, supra, the Montana Supreme Court stated:

"It is conceded by a great weight of text authority and case law that this kind of waiver is not enforceable as a matter of public policy. This view gains its strength in the principle that the statutory exemption is for the protection of the family of the debtor as much as for the debtor * * *. For that reason the debtor cannot by executory contract waive the provisions made by law for family support and maintenance. 35 C.J.S. Exemptions § 103, pp. 152, 153; 94 A.L.R.2d 969; 31 Am.Jur.2d, Exemptions, § 155, pp. 457, 458 and cases cited therein * * *." 483 P.2d at 912.

See also *Celco, Inc. of America v. Davis Van Lines, Inc.*, supra, 598 P.2d 188.

■ An executory waiver of the earnings exemption is not permissible as a matter of public policy. To support our holding, we rely on the following reasoning: "* * * [T]he debtor cannot waive the privilege of claiming the exemption in advance. This rule is based on the theory that exemption laws are made for the benefit of the debtor and his family, and that it is against public policy for him to waive any benefits of the law in advance of the time when it is necessary for him

to do so. If it were not for this rule, it is said, creditors would insist on inserting the clause waiving exemption laws in every executory contract. These would usually be made at a time when the debtor was in need of money, and would be enforceable at some time in the future when, perhaps, he or his family would require the exemption. By doing so he would waive practically all the benefits of the exemption laws." *Industrial Loan & Investment Co. of San Francisco v. Superior Court of California*, 189 Cal. 546, 209 P. 360, 361 (1922).

A security agreement which purports to deny a debtor and his family a statutory earnings exemption is precisely the type of executory arrangement that we find objectionable and contrary to public policy. If we permitted a security interest, either expressly or by implication, to waive statutory exemptions, practically all the benefits of the exemption law would be defeated.

In *Transnational Consumer Discount Co. v. Kefauver*, 224 Pa.Super. 475, 307 A.2d 303 (1973), the debtor had signed a judgment note and security agreement containing a clause that the signers " 'waive all relief from all appraisement and exemption laws of any State now in force or hereafter to be passed.' " 307 A.2d at 303. After payment default, his creditor obtained default judgment and pursued execution on the household goods covered by the security agreement. The debtor claimed a statutory exemption for personal property. The Kefauver court refused to give effect to the waiver provision, and held that "no waiver may be found unless it is also found that the debtor has voluntarily relinquished a right he knows he has," 307 A.2d at 304, and concluded:

" '[A] waiver in the law is the act of *intentionally* relinquishing or abandoning some known right, claim or privilege [citations omitted]. To constitute a waiver of legal right, there must be a clear, unequivocal and decisive act of the party with knowledge of such right and an

---

**2.** The trial court determined the case as to this issue on an after-acquired property security instrument construction. We do not choose to consider that complex issue in this case. Actually, neither of the parties addressed that issue on appeal by argument or case citation.

evident purpose to surrender it [citations omitted].' " 307 A.2d at 305, quoting from *Howard Johnson v. Concord Mutual Insurance Company,* 450 Pa. 614, 300 A.2d 61, 64–65 (1973).

Although there has been no showing that the Podolaks voluntarily and knowingly relinquished their right to the earnings exemption, our conclusion does not rest on that fact. The Kefauver court stated that its resolution did not require consideration of the debtor's argument that the exemption waiver provision should be held invalid as contrary to public policy. Two years after Kefauver, in *Mayhugh v. Coon,* 460 Pa. 128, 331 A.2d 452 (1975), the Pennsylvania Supreme Court examined contractual exemption waiver provisions in light of public policy. We are persuaded by that court's public policy pronouncements regarding the waiver of statutory exemptions.

The Mayhugh court went considerably further than the holding in Kefauver, and held that the exemption may not be waived either expressly or by implication. 331 A.2d at 457. The Mayhugh court observed that the exemption statutes

"* * * reflected a realization that justice to a creditor may well result in oppression to a debtor. Further, it represented an application that stripping the poor and distressed of all their worldly possessions in an effort to satisfy an obligation, albeit just, was not in the public interest * * *. The policy and object of the legislation in conferring the exemption benefits was to afford the debtor, and his family, the prime necessities of life, and to furnish the insolvent a nucleus with which to begin life anew. It would be absurd to assume that a legislature would intend to permit such a basic and obviously strong policy to be completely frustrated by the mere alteration of the agreement." 331 A.2d at 455.

Similarly, in *Resolute Insurance Co. v. Pennington,* 423 Pa. 472, 224 A.2d 757, 760 (1966), the court stated:

"It is well settled in this Commonwealth that public policy forbids a working man from waiving the exemption from attachment provided by law as to his wages."

The century-old exemption enactments in Wyoming were intended to effectuate the same public policy. We therefore hold that the Wyoming earnings exemption, unless the exemption statute otherwise provides, cannot be anticipatorily waived, either expressly or by implication. We would not allow the Bank's security interest, if valid, "[t]o deprive [the Podolaks] of even this meager allowance through a tenuous construction of an implied waiver of the exemption statute." *Beneficial Consumer Discount Co. v. Hamlin,* 263 Pa.Super. 393, 398 A.2d 193, 203 (1979).

■ Appellant faces another problem in attacking the exemption, based on a contended security instrument exemption waiver when it did not seek right, title or interest by that security agreement. The Bank chose to execute, which properly presented an exemption question for judicial consideration. We have not found any authority which denied exemption by security agreement waiver when the possessory process used was execution. In the absence of cited authority, we would conclude that the Bank is bound by the process and its attributes as derived from the cause of legal process chosen. *Federal Land Bank of Omaha v. Miller,* Wyo., 730 P.2d 122 (1986).

## CONCLUSION

The Podolaks earned income from growing wheat on their farm, and that income falls within the earnings exemption provisions of § 1–17–411, W.S.1977, 1986 Cum. Supp.

The judgment of the district court is affirmed.

MACY, J., filed a dissenting opinion in which BROWN, C.J., joined.

MACY, Justice, dissenting, with whom BROWN, Chief Justice, joins.

It is unfortunate that the majority have chosen to redefine a statute which appears to have been clear for 84 years. This area of the law needs to remain clear. This case

illustrates that exemptions which are not clear and need to be litigated are of little practical use. The money which was necessary for the support of appellees' family has been held up and not used by either party for almost one year. While it may appear that the majority have interpreted this statute so that it will benefit the farmer and rancher, the long-term result may well be that operating loans will no longer be available to many farmers and ranchers.

The statute in question is § 1–17–411, W.S.1977, as amended effective June 11, 1986.[1] It stated:

"The court may order any property of the judgment debtor or money due him in the hands of either himself or another person, not exempt by law, to be applied toward the satisfaction of a judgment. Upon seizure of his property or money, a judgment debtor may request a hearing pursuant to W.S. 1–17–405(c). One-half (½) of the *earnings of the judgment debtor for his personal services rendered within sixty (60) days immediately preceding the levy of execution or levy of attachment, and due and owing at the time of the levy, are exempt* when it appears by the debtor's affidavit or otherwise that the earnings are necessary for the use of his family residing in this state, supported wholly or in part *by his labors.*" (Emphasis added.)

If this statute is read as a whole and in context, it is apparent that it is not intended to exempt one-half of a farmer's crops. Standard statutory construction demands that we give meaning to each clause in a statute, especially a limiting clause. *Hamlin v. Transcon Lines*, Wyo., 701 P.2d 1139 (1985). The majority's interpretation effectively eliminates each limiting clause in this statute.

First the statute uses "earnings," not income or proceeds. The term is more commonly used in connection with wage earners than it is with businesses or sole proprietorships. The legislature further included the phrase "for his personal services." Clearly, this limitation is meant to exclude from exemption earnings which are

the result of capital. A large part of the cost to produce wheat stems from the use of capital instead of labor. There is a capital expenditure for land, water, seed, fertilizer, pesticides, and, especially in this case, contract labor. Mr. Bredthauer's services are capital and certainly not the personal services of appellees. Under the facts of this case, there can be no doubt that the bulk of the expenditures for making the wheat available was from capital and not from appellees' labors. The legislature intended to limit the exemption to personal services of the judgment debtor. It provides no protection to income realized from the judgment debtor's capital.

The exemption is further limited by the phrase "necessary for the use of his family residing in this state, supported wholly or in part *by his labors.*" (Emphasis added.) The family must be supported by the labors of the judgment debtor, not by the income the judgment debtor receives from his personal capital. Clearly, a judgment debtor cannot use this exemption to hold back one-half of the interest he made from his savings account, even though he had to go to the bank, deposit the money, and later collect the interest. Land, water, seed, fertilizer, pesticides, and contract labor are all forms of capital, like money in a bank.

The exemption is also limited by the phrase "services rendered within sixty (60) days." When applied to crops, the question becomes how much growth occurred in the last 60 days. Further, assuming that it is possible to know how much growth took place in the last 60 days, how much of the growth is attributable to the farmer's personal services? By holding that crops are "earned" when they are sold, the majority have deleted the limitation. Sixty days is intended to limit the size of the exclusion. If the crop's growing season is ten months, as for wheat, calling the sale of the crop the earnings expands 60 days to ten months. If the crop was trees, 60 days could be expanded to 20 years. Clearly, that makes the limitation ineffective. The majority say not to worry as the judge still

1. This section was subsequently amended effective May 22, 1987.

must award only that which is necessary for the support of the family. However, the legislature has decided that the exemption pie is only as big as 60 days' earnings from personal services. The majority cannot say that the pie is ten months large and justify it by saying that only the piece of pie which is needed will be served. The need may well be in excess of the pie the legislature originally created.

The last limiting phrase is "due and owing at the time of the levy." This phrase cannot logically be applied to a farmer's crops. Does the field owe the farmer a crop? When is the field due to pay the farmer his crop? Clearly, if the legislature had intended to limit the crops which can be taken from a farmer, it would have used language much more conducive to that objective.

The majority are correct in that "earnings" is generally intended to cover more than wages. 35 C.J.S., Exemptions §§ 47 and 48 (1960). However, the legislature gave some indication of its intent when it amended § 1–17–405(c), W.S.1977, effective June 11, 1986 (now § 1–17–102(b), W.S. 1977). The new language contained in paragraph (viii) of that subsection required notice to judgment debtors and listed a possible exemption for "[a] portion of *wages,* if necessary for family support as provided in W.S. 1–17–411." (Emphasis added). Even if "earnings [from] personal services rendered within sixty (60) days * * and due and owing" is intended to be greater than "wages," it cannot be construed to cover crops. *Fay Securities Co. v. Bowering,* 106 Cal.App.Supp. 771, 288 P. 41 (1929); *Clapp v. Smith,* 91 Okl. 84, 216 P. 120 (1923). A farmer's crops are generally recognized to be property or goods, and not earnings. U.C.C. § 2–105(1). The exemptions for property are given by Chapter 20, not by § 1–17–411. It is inappropriate for this Court to create or expand an exemption where the legislature has not so provided. The legislature surely was aware of the special circumstances of farmers and ranchers in 1886 just as it is today.[2] If crops were intended to be covered by § 1–17–411, much different language would have been used. The party claiming an exemption has the burden of proving that he meets the requirements of the exemption. *Hancock v. Stockmens Bank & Trust Company,* Wyo., 739 P.2d 760 (1987); 35 C.J.S., Exemptions § 4b (1960). Even with liberal construction of the statute and deference to the findings of the trial court, these appellees do not qualify so as to retain one-half of their crops.

I would reverse.

---

**2.** Effective May 22, 1987, the legislature deleted the language in question here from § 1–17–411. The earnings exemption now is found under the garnishment article, § 1–15–408, W.S.1977. Under the attachment article is the following language from § 1–15–203(a)(ii), W.S.1977: "Growing crops, * * * until severed[,] shall be deemed *personal property* not capable of manual delivery." (Emphasis added.)