In re James Albert COONES and Cindy Lee Coones, f/k/a Cindy Lee Jones, Debtors.

FEDERAL DEPOSIT INSURANCE CORPORATION, as receiver of Stockmen's Bank and Trust Company, and liquidator of First National Bank of Sheridan, Appellee,

v.

James Albert COONES, Cindy Lee Coones, f/k/a Cindy Lee Jones, Appellants.

Nos. 90–8113, 90–8114.

United States Court of Appeals, Tenth Circuit.

Jan. 3, 1992.

Rehearing Denied Feb. 14, 1992.

Stephen R. Winship, Casper, Wyo., for appellants.

Jeanne R. Lee, Senior Atty. Bankruptcy, Federal Deposit Ins. Corp., Denver, Colo., and Thomas M. Hogan, Casper, Wyo. (Ann S. DuRoss, Asst. Gen. Counsel, Joan E. Smiley, Senior Counsel, Edward J. O'Meara, Counsel, Federal Deposit Ins. Corp., Washington, D.C.), for appellee.

Before LOGAN, MOORE and BALDOCK, Circuit Judges.

LOGAN, Circuit Judge.

In these two appeals from Chapter 11 bankruptcy proceedings, debtors appeal district court decisions (1) determining that the appellee Federal Deposit Insurance Corporation (FDIC) possessed an enforceable security interest in debtors' crops (appeal No. 90–8113); and (2) denying debtors' motion, made pursuant to 11 U.S.C. § 522(f), to avoid the FDIC's liens in debtors' post–1986 crops and livestock (appeal No. 90–8114). This court will review the bankruptcy court's factual findings under a clearly erroneous standard, but we will review the district court's legal determinations de novo. *Dalton Dev. Project # 1 v. Unsecured Creditors Comm. (In re Unioil)*, 948 F.2d 678, 681 (10th Cir.1991). Upon careful consideration of debtors' arguments on appeal, we affirm.[1]

In 1986, debtors and Stockmen's Bank & Trust Company (Stockmen's) entered into two loan transactions. Along with two promissory notes, debtors executed security agreements which gave Stockmen's a secured interest in, among other things,

---

1. After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R.App.P. 34(f); 10th Cir.R. 34.1.9. The cases are therefore ordered submitted without oral argument.

"FARM PRODUCTS: All farm products of the [debtors], whether now owned or hereafter acquired including but not limited to (i) all poultry and livestock and their young, products thereof and produce thereof, (ii) all crops, whether annual or perennial, and the products thereof....

In addition to any property generally described above, the following Collateral: ALL INVENTORY OF CATTLE, HORSES, AND ALL OTHER LIVESTOCK, ALL FARM PRODUCTS OF CATTLE, HORSES, AND ALL FARM EQUIPMENT AND MACHINERY, OTHER EQUIPMENT AND MACHINERY, INVENTORY, FARM PRODUCTS, HAY, GRAIN, CROPS, CROP INVENTORY AND CROP FARM PRODUCTS, VEHICLES, ACCOUNTS, CONTRACT RIGHTS, OR GENERAL INTANGIBLES ARISING FROM THE SALE OR DISPOSITION OF PRODUCTS THEREOF NOW OWNED OR HEREAFTER ACQUIRED AND WHEREVER LOCATED."

Appellee's Supp.App. at 231; *see also id.* at 239.

In October 1988, debtors jointly filed for Chapter 11 bankruptcy relief. On their bankruptcy schedules, debtors listed as exempt property, *see generally* 11 U.S.C. § 522, inter alia, seventy-five percent of their livestock acquired and their crops grown after 1986. Debtors asserted this property was exempt as personal service earnings under Wyoming law. No timely objection to the exemption was filed by any interested party.

In February 1989, the FDIC filed a motion to prohibit debtors' use of cash collateral. *See generally* 11 U.S.C. § 363(e). Later in February 1989, debtors filed an application to avoid the FDIC's liens impairing the claimed exempt property.

Following a hearing, the bankruptcy court denied debtors' claimed exemptions, despite the lack of a timely objection, ruling the exemptions had no valid state law basis. *See* Appellants' App., doc. 1, 9–10.

In a subsequent order dated June 26, 1989, the bankruptcy court denied the FDIC's motion to prohibit use of cash collateral, but only as to the FDIC's interest in debtors' crops, ruling that the FDIC did not have an enforceable security interest in debtors' crops. *See* Appellants' App., doc. 2, 4–7. The bankruptcy court granted the FDIC's motion to prohibit use of cash collateral insofar as it pertained to "cash collateral which is not the proceeds of the debtors' crops." Appellee's Supp.App. at 184–85.

The parties filed cross-appeals from the bankruptcy court determinations. The district court certified the question of the validity of debtors' claimed exemptions under Wyoming law to the Wyoming Supreme Court. *See* Appellee's Supp.App., 1–4. The Wyoming Supreme Court determined debtors' personal service earnings exemption had no valid basis under Wyoming state law. *Coones v. FDIC,* 796 P.2d 803, 806 (Wyo.1990).

The district court then determined that, in light of the Wyoming Supreme Court decision, debtors were not entitled to the personal service earnings exemption, even though the FDIC had failed to object to that exemption in a timely manner. *Coones v. FDIC,* No. C89–243–K, Order on Appellants' Exemption Appeal (D.Wyo. Dec. 5, 1990). In another order also dated December 5, 1990, the district court reversed the bankruptcy court determination that the FDIC did not have an enforceable security interest in debtors' crops. *Coones v. FDIC,* No. C89–242–K, Order on Appellant's Crops' Security Interest Appeal (D.Wyo. Dec. 5, 1990). Debtors appeal from both of these district court determinations.

## I

■ The first issue presented is whether the lack of a timely objection to debtors' claimed exemption precluded the bankruptcy court from denying that exemption, even though the exemption has no valid state law basis.[2] Section 522, however,

---

**2.** Bankruptcy Rule 4003(b) requires that any    trustee or creditor may file an objection to a

contains an implicit requirement that the claimed exemption have a valid statutory basis. *See, e.g., Sherk v. Texas Bankers Life & Loan Ins. Co. (In re Sherk)*, 918 F.2d 1170, 1174–75 (5th Cir.1990). The lack of a timely objection will not preclude the bankruptcy court's exercise of its authority to deny an exemption that has no legal basis. *See, e.g., id.* *But see Taylor v. Freeland & Kronz*, 938 F.2d 420, 423 (3d Cir.), *cert. granted*, —— U.S. ——, 112 S.Ct. 632, 116 L.Ed.2d 602 (1991) (lack of timely objection precludes bankruptcy court's exercise of its authority to deny an exemption).

■ Debtors argue that this court should adopt the Sixth Circuit's conclusion in *Munoz v. Dembs (In re Dembs)*, 757 F.2d 777 (6th Cir.1985), that failure to object to a claimed exemption that has a good faith basis in state law will conclusively establish the debtor's exemption. *See id.* at 780; *see also Halverson v. Peterson (In re Peterson)*, 920 F.2d 1389, 1392–94 (8th Cir.1990) (debtor can overcome late objection only if exemption appeared in good faith to have been valid). Even under *Dembs'* good faith analysis, debtors' argument fails because their claimed exemption lacked a good faith basis under Wyoming law.

In claiming their exemption, debtors relied upon the Wyoming Supreme Court decision in *Lingle State Bank v. Podolak*, 740 P.2d 392 (Wyo.1987). *Podolak*, however, addressed a prior state statute that did not apply to debtors' claims, *see Coones*, 796 P.2d at 804–05, and which has been rewritten so that a "present comparison is ... impracticable." *Podolak*, 740 P.2d at 394 n. 1. Recognizing this, the *Podolak* court acknowledged that its decision "is consequently circumscribed in future application." *Id.* Therefore, debtors' claimed exemption, based upon the Wyoming Supreme Court's decision in *Podolak*,

did not have a good faith basis in Wyoming law.

**II**

■ Debtors next argue that the FDIC did not have an enforceable security interest in debtors' crops because the security agreements failed to include a description of the property on which the crops were grown. Wyoming law controls the determination of the validity of the liens. *See In re Martin Grinding & Mach. Works, Inc.*, 793 F.2d 592, 594 (7th Cir.1986).

■ To create an enforceable security interest, Wyoming law requires, inter alia, a security agreement, signed by the debtor, which contains a description of the collateral. Wyo.Stat. § 34.1–9–203(a)(i). If the collateral includes crops, growing or to be grown, the security agreement must also include a description of the land concerned. *Id.; see also Citizens Nat'l Bank & Trust Co. v. Serelson (In re Burkart Farm & Livestock)*, 938 F.2d 1114, 1115 (10th Cir. 1991).

The security agreements in the instant case did not include a description of the land upon which debtors' crops were growing or were to be grown. Rather, in the section on the security agreements designated as "Description of Real Estate if above Collateral is crops, growing or to be grown," the security agreements included the language "RECORDED ON FINANCING STATEMENT DATED MAY 16, 1986." Appellee's Supp.App., 231; *see also id.* at 239. Thus, the security agreements did specifically refer to the description of land included in the financing statements filed by Stockmen's to perfect its liens in these crops.

■ Debtors argue, however, that the land description must be included in the security agreement and, therefore, reference to the financing statements cannot provide the necessary land description.

claimed exemption within thirty days after the conclusion of the meeting of creditors or the filing of any amendment to the listed exemptions. Rule 4003(b) further provides that the bankruptcy court may only extend the time to file an objection if the extension is requested

within the original time for filing the objection. *See also Clark v. Brayshaw (In re Brayshaw)*, 912 F.2d 1255, 1256–57 (10th Cir.1990). The parties do not dispute the lack of a timely filed objection.

We disagree. A security agreement need not be evidenced by a single document, but may be established through consideration of two or more written documents. *Looney v. Nuss (In re Miller)*, 545 F.2d 916, 918 n. 4 (5th Cir.) (applying Texas law), *cert. denied*, 430 U.S. 987, 97 S.Ct. 1687, 52 L.Ed.2d 382 (1977); *see also, e.g., Royal Bank & Trust Co. v. Pereira (In re Lady Madonna Indus., Inc.)*, 99 B.R. 536, 542 (S.D.N.Y.1989) (composite document theory of security agreements permits finding security agreement through various loan documents) (dicta), and cases cited therein. It is appropriate to refer to other documents to establish the security interest unless the security agreement is facially complete and does not refer to any other documents. *See In re Lady Madonna Indus.*, 99 B.R. at 542.

The security agreements at issue in these appeals clearly incorporated the land description included in the financing statements. Reference to the financing statements to establish the FDIC's security interests, therefore, was not erroneous. *See Longtree, Ltd. v. Resource Control Int'l, Inc.*, 755 P.2d 195, 203–04 (Wyo.1988) (subsequent, unsigned document describing additional collateral may be considered in establishing security interest created by original security agreement, if documents express some internal connection with one another); *cf. Maxl Sales Co. v. Critiques, Inc.*, 796 F.2d 1293, 1298 (10th Cir.1986) (applying Kansas law) (security agreement incorporated by reference consignment agreement); *Pontchartrain State Bank v. Poulson*, 684 F.2d 704, 707 (10th Cir.1982) (applying Oklahoma law) (documents, considered separately or taken as a whole, did not satisfy requirements of Oklahoma U.C.C. § 9–203).

The authorities debtors cite for the proposition that a security agreement may not be expanded by reference to the financing statement are inapposite. Those cases addressed situations where the creditor attempted to correct a deficiency in the security agreement's description of collateral by referring to the financing statement, even though the security agreement did not specifically incorporate the description of the collateral in the financing statement by reference. *See, e.g., Mitchell v. Shepherd Mall State Bank*, 458 F.2d 700, 702–04 (10th Cir.1972) (applying Oklahoma law); *In re Martin Grinding*, 793 F.2d at 594–95 (applying Illinois law).

■ Debtors next argue that the FDIC's security interest in debtors' crops is not enforceable because the security agreements' description of the land, incorporated from the financing statements, was insufficient. "[A]ny description of ... real estate is sufficient whether or not it is specific if it reasonably identifies what is described." Wyo.Stat. § 34.1–9–110.

"The test of sufficiency of a description laid down by this section is that the description do the job assigned to it—that it make possible the identification of the thing described. Under this rule courts should refuse to follow the holdings ... that descriptions are insufficient unless they are of the most exact and detailed nature...."

Wyo.Stat. § 34.1–9–110 Official Comment.

■ The financing statements described the land by range, township and section. *See* Appellee's Supp.App., 245, 246. Although a legal description of the land is not required, *cf. In re McMannis*, 39 B.R. 98, 100 (Bankr.D.Kan.1983) (applying Kansas U.C.C. § 9–110), the Wyoming Supreme Court, in addressing a similar issue, noted that "[t]he cautious creditor cannot go wrong by using a section-township legal description, so long as it is accurate." *Landen v. Production Credit Ass'n*, 737 P.2d 1325, 1329 (Wyo.1987) (quoting *United States v. Collingwood Grain, Inc.*, 792 F.2d 972, 975 (10th Cir.1986) (quoting Kansas Comment to Kan.Stat.Ann. § 84–9–402)).

■ Debtors, however, assert that the legal description in the financing statements is in error because, in addition to describing debtors' property, the legal description includes land belonging to adjoining land owners. Failure to specify the particular pieces of a section on which the crops are growing or will be grown, however, will not destroy an otherwise sufficient land description. *Cf. Collingwood*, 792 F.2d at 974–75 (land description indicat-

ing crops growing on 160–acre tract in a particular section, but not precisely indicating location of 160–acre tract within that section, was sufficient description of land). The land descriptions contained in the financing statements are sufficient to identify debtors' property upon which the crops were grown.

### III

 Finally, debtors argue that, in any event, the FDIC's secured interest in post-petition crops was extinguished by the bankruptcy filing. Debtors rely upon 11 U.S.C. § 552(a), which provides that "[e]xcept as provided in subsection (b) of this section, property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case." Subsection (b), however, with exceptions not relevant here, provides that

> "if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, ... then such security interest extends to such proceeds, ... acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable nonbankruptcy law, except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise."

11 U.S.C. § 552(b).

The district court correctly determined that, because the post-petition crops were produced with the proceeds of debtors' pre-petition crops, proceeds in which the FDIC's security interest continued after initiation of bankruptcy proceedings, § 552 did not extinguish the FDIC's secured interest in the post-petition crops. *See J. Catton Farms, Inc. v. First Nat'l Bank*, 779 F.2d 1242, 1244, 1246–47 (7th Cir.1985) (applying § 552(b) to use of proceeds of pre-petition crop collateral, including government payments not to grow crops, to produce post-petition crops) (dicta).

"[W]hen a secured party has a pre-petition security interest in a crop in Year 1,

its security interest extends to the post-petition proceeds of that crop as well as to the post-petition crop in Year 2 and its proceeds if the Year 2 crop is financed with the proceeds of the Year 1 crop." *Unsecured Creditors Comm. v. Marepcon Fin. Corp. (In re Bumper Sales, Inc.)*, 907 F.2d 1430, 1439 (4th Cir.1990) (dicta).

Debtors argue that "[t]here is no evidence in the appeal record that any proceeds were ... used ... 'to create the post-petition crops.' ... For the District Court to rely on such a position, it should have remanded the matter for further findings." Appellants' Reply Br. at 9. In support of this argument, however, debtors assert only that "as a practical matter it is rather doubtful that monies advanced in May, 1986 were used to create a winter wheat crop planted in late 1988." That allegation is not sufficient to compel this court to reverse the district court's determination.

The parties' remaining arguments lack merit. The judgments of the United States District Court for the District of Wyoming are, therefore, AFFIRMED.