J-A17011-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| NATIONAL LOAN INVESTORS, L.P., ASSIGNEE OF SANTANDER BANK, N.A. AND PREFERRED CAPITAL BIDCO, INC. F/K/A STAR BUSINESS AND INDUSTRIAL DVELOPMENT CORPORATION | : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : | |
| BARRY L. GOLD AND STACY B. GOLD | : : | |
| Appellants | : | No. 2412 EDA 2019 |

Appeal from the Judgment Entered September 17, 2019
In the Court of Common Pleas of Montgomery County Civil Division at
No(s):  2017-21379

BEFORE:  BOWES, J., McCAFFERY, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY BOWES, J.:　　　　　　　**FILED NOVEMBER 13, 2020**

Barry L. Gold and Stacy B. Gold (collectively "the Golds") appeal from the *in rem* judgment entered against them and in favor of National Loan Investors, L.P. ("NLI"), following a non-jury trial in this mortgage foreclosure action.  We affirm.

The underlying history, taken from the trial court's findings of fact and the documents in question, is as follows.  On November 11, 2004, the Golds, as president and secretary of Goldfish 5, Inc., executed a note in favor of a predecessor of NLI in the amount of $233,000.  On the same day, the Golds also personally executed a guarantee on the note, and a mortgage on their property on Dundee Drive in Dresher, Pennsylvania, to secure the guarantee. The instruments were ultimately assigned to NLI.

The Golds made no payments on their obligations after June 2008. After sending the requisite notice, NLI commenced this mortgage foreclosure action by filing a complaint. The case proceeded to a bench trial on May 21, 2019. At the conclusion of trial, the parties agreed that the trial court would take the matter under advisement, and not render a verdict, until this Court issued a decision in **Driscoll v. Arena**, 213 A.3d 253 (Pa.Super. 2019) (*en banc*), which was then pending. After this Court filed its opinion in **Driscoll**, the trial court issued its findings of fact and conclusions of law and entered an *in rem* judgment in favor of NLI in the amount of $358,466.03.

The Golds filed a timely post-trial motion, which the trial court denied by order entered August 5, 2019. Judgment was entered on the verdict, and the Golds thereafter filed a timely notice of appeal, and both the Golds and the trial court complied with Pa.R.A.P. 1925. The Golds present the following questions for this Court's consideration:

> 1. Did the trial court commit an error of law in ruling that the Mortgage was executed under seal, and hence governed by the twenty-year statute of limitations, when there was no seal or mark indicating a seal next to or in close proximity to the [Golds'] signatures, and the only reference to a seal was in the testimonium clause, which mirrored language that the Pennsylvania Supreme Court has held in repeated decision[s] is insufficient, standing alone, to create an instrument under seal?
>
> > a. Does the Superior Court's *en banc* decision in **Driscoll** . . . control the issue regarding the seal where the Pennsylvania Supreme Court has held in a line of cases that have not been overruled by that Court that in the circumstances of this case a seal or mark indicating a seal is required to make an instrument under seal, and the

Superior Court's decision in **Driscoll** in stark contrast to this well-established precedent?

b.       Even assuming, *arguendo*, that the *en banc* Superior Court decision in **Driscoll** controls, did the trial court commit an error of law in ruling that under **Driscoll** the language in the testimonium clause expressed an unequivocal intent to execute the Mortgage under seal?

2.       Did the trial court commit an error of law in ruling that [NLI] had standing to bring an *in rem* foreclosure action where its claim under the Note was extinguished by the statute of limitations and NLI therefore could not enforce the obligations under the Note?

The Golds' brief at 2-4.

We begin with the applicable legal principles.

Our appellate role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of a jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law. However, where the issue concerns a question of law, our scope of review is plenary.

The trial court's conclusions of law on appeal originating from a non-jury trial are not binding on an appellate court because it is the appellate court's duty to determine if the trial court correctly applied the law to the facts of the case.

**Bank of New York Mellon v. Bach**, 159 A.3d 16, 19 (Pa.Super. 2017) (internal quotation marks omitted).

Actions upon "a negotiable or nonnegotiable bond, note or other similar instrument in writing" are generally subject to a four-year statute of

limitations. *See* 42 Pa.C.S. § 5525(7). However, "[n]otwithstanding section 5525(7) (relating to four year limitation), an action upon an instrument in writing under seal must be commenced within 20 years." 42 Pa.C.S. § 5529(b)(1). The mortgage instrument at issue herein identifies the Golds collectively as "the Mortgagor," and NLI's predecessor as "the Mortgagee." *See* Complaint, 8/28/17, at page 1 of Exhibit C. The Golds' signatures at the end of the document directly follow the statement: "IN WITNESS WHEREOF, Mortgagor has caused this Mortgage to be duly executed on its behalf and its seal to be hereunto affixed as of the date first above written." *Id*. at 17.

The dispute in this case is whether the mortgage document is "under seal."[1] The Golds' first cluster of questions concerns the import of the *Driscoll* to resolution of this case, we begin by examining that decision. The *Driscoll* case involved confessed judgments entered upon promissory notes that had been executed in 2005 and 2009. A central issue before this Court was whether the notes at issue were instruments under seal. If not, the writs of execution filed in 2016 were barred by the four-year limitation provided by 42 Pa.C.S. § 5525(7). If so, the actions were instead governed by the twenty-year statute, which provides as follows: "Notwithstanding section 5525(7)

---

[1] "Whether an instrument is under seal or not is a question of law for the court, and whether a seal placed on an instrument has been adopted by the maker as his seal is a question of fact." *Swaney v. Georges Twp. Rd. Dist.*, 164 A. 336, 337-38 (Pa. 1932). As there was no seal placed on the Golds' mortgage instrument, we face a pure question of law in this appeal.

- 4 -

(relating to four year limitation), an action upon an instrument in writing under seal must be commenced within 20 years." 42 Pa.C.S. § 5529(b)(1).

Each of the notes in **Driscoll** contained the following statement on the second of two pages, under the heading "Waiver": "Borrower intends this to be a sealed instrument and to be legally bound hereby." **Driscoll**, **supra** at 258. The trial court determined that this language was insufficient to bring the notes within the applicability of § 5529(b)(1)'s twenty-year statute. This Court disagreed, reaching its decision following a review of precedent concerning instruments under seal, as well as the general rules of contract interpretation.

We began by noting our decision in **Beneficial Consumer Discount v. Dailey**, 644 A.2d 789 (Pa.Super. 1994), in which we held that, when a document contains the pre-printed word "SEAL" next to the signatories' names, there is a presumption that the twenty-year statute applies. We explained:

> Unless one distances himself from the pre-printed seal, the other party to a contract should be entitled to rely on the objective manifestations of the maker's actions. There can be no question that the pre-printed "SEAL" is an actual seal and that the borrowers signed next to it. The borrowers were under no duty to accept the seal, and had every opportunity to inquire about its significance, and signed the agreement freely. We must therefore agree with the trial court that the obligation should be enforced.

**Driscoll**, **supra** at 258–59 (cleaned up). We deemed it significant that **Beneficial Consumer** did not require that the word seal be located by the signature line, or address the situation where the contract expresses the intent

regarding the sealed nature of the instrument without including any mark near the signature.  *Id*. at 259.  We continued:

> There appears to be no Pennsylvania authority directly controlling the question before us, though a 19th century opinion from our Supreme Court provides some guidance:
>
>> The days of actual sealing of legal documents, in its original sense of the impression of an individual mark or device upon wax or wafer, or even on the parchment or paper itself, have long gone by. It is immaterial what device the impression bears, and the same stamp may serve for several parties in the same deed. Not only so, but the use of wax has almost entirely—and, even of wafers, very largely—ceased. **In short, sealing has become constructive, rather than actual, and is in a great degree a matter of intention**.

*Driscoll*, *supra* at 259 (quoting *Lorah*[2] *v. Nissley*, 27 A. 242 (Pa. 1893) (emphasis added in *Driscoll*)).

We then reiterated that the goal of interpreting contracts is to determine and give effect to the intent of the parties as expressed in the language used, giving effect to all of its provisions.  *Id*.  Since the plain language of the notes—"Borrower intends this to be a sealed instrument and to be legally bound hereby"—unequivocally demonstrated the intent that the document be a sealed instrument, and relying upon the absence of a mark near the signature line would render that express provision meaningless, we concluded

---

[2] The plaintiff's name is alternatively reported by Westlaw as "Lorah" and "Loraw."  The Golds indicate "Lorah" is correct, and we opt to use that spelling. *See* the Golds' brief at 20 n.4.

that the notes were sealed instruments subject to § 5529(b)(1)'s twenty-year statute.  *Id*. at 259-60.

The trial court determined that "*Driscoll* compels the conclusion in the present case that the Mortgage signed by the Golds is likewise governed by a 20-year statute."  Trial Court Opinion, 7/10/19, at 4.  It explained:

> As in *Driscoll*, there is no indication of a seal next to the Golds' signatures, but the sentence immediately above the signature lines provides that "Mortgagor has caused this Mortgage to be duly executed on its behalf and its seal to be hereunto affixed as of the date first above written."  If the similar language in *Driscoll* was considered sufficient to render the notes as instruments under seal, then *a fortiori* the quoted language in the present case, not "buried" in the paragraphs setting forth the terms and conditions of the Mortgage, has the same effect.

*Id*. at 4-5.

The Golds argue that the *Driscoll* Court confused the word "seal" with an actual seal, and rendered a decision that is contrary to our Supreme Court's precedent requiring some actual seal, which may or may not be the word "seal."  *See* the Golds' brief at 14 n.2 (citing *Lorah*, *supra* at 331 ("[A]ny flourish or mark, however irregular or inconsiderable, will be a good seal, if so intended.").

In support, the Golds rely upon ancient decisions, which they note have never been expressly overruled, that were handed down both before and after *Lorah*.  *See* the Golds' brief at 15-19.  For example, in *Taylor v. Glaser*, 2 Serg. & Rawle 502 (Pa. 1816), the instrument contained "nothing like a seal" but two witnesses had signed to indicate that the document had been "sealed

and delivered" in their presence. *Id*. at 504. The Court ruled that the writing was not a sealed instrument because it is the fact of actual sealing, rather than an assertion of sealing, that establishes a document as a writing under seal. *Id*. ("[A]lthough in the body of the writing, it is said, that the parties have set their hands and seals, yet it is not a specialty, unless it be actually sealed and delivered; . . . if it be actually sealed and delivered, it is a specialty, although no mention be made of it in the body of the writing; the fact, and not the assertion, fixes the nature of the instrument.")). The Golds also cite *In re Contest of Election of Burns*, 171 A. 888 (Pa. 1934), in which the Court applied *Taylor* to hold that the writing did not qualify as a sealed instrument. The Golds maintain that, because *Driscoll* is contrary to these decisions, we should ignore it in favor of *Taylor* and its progeny. *Id*. at 23-24.

In the alternative, the Golds assert that *Driscoll* does not control because it is factually distinguishable. Specifically, they note that the instrument in *Driscoll* contained language "which expresses a present intention to be sealed with no subsequent act required," while the language of the mortgage they signed "requires a seal to be affixed, and no seal was affixed." *Id*. at 26. In other words, the Golds argue,

> providing in the testimonium clause that you are going to affix your seal "hereunto," which is exactly what the language in the Golds' Mortgage provides, and failing to actually affix a seal, does not create a sealed instrument because the final step required to make it a sealed instrument was never completed. As the Court in *Taylor* reasoned, "it is no uncommon thing for writings to be

- 8 -

drawn as if designed to be sealed and delivered, and yet executed without a seal." Accordingly, the language in the Golds' Mortgage does not express a clear and unequivocal present intention to execute the Mortgage under seal, but instead expresses only an intention to affix their seal "hereunto", which was required to render the Mortgage under seal, and which was never done.

*Id*. at 26-27.

We now consider the document at issue in the instant case in light of ***Driscoll*** and the Golds' arguments. The mortgage instrument identifies the Golds collectively as "the Mortgagor," and NLI's predecessor as the Mortgagee. ***See*** Complaint, 8/28/17, at page 1 of Exhibit C. The Golds' signatures at the end of the document directly follow the statement: "IN WITNESS WHEREOF, Mortgagor has caused this Mortgage to be duly executed on its behalf and its seal to be hereunto affixed as of the date first above written." ***Id***. at 17.

We agree with the trial court that, given ***Driscoll***'s acknowledgment of our Supreme Court's post-***Taylor*** focus on the intent of the parties and observation that sealing has become constructive, the Golds' mortgage sufficiently evidences the intent to create an instrument under seal. The language used—"the Mortgagor **has caused** this Mortgage to be duly executed on its behalf and **its seal to be hereunto affixed** as of the date first above written"—indicates not an intent to affix a seal in addition to signing, but that sealing is complete when the document is signed.[3] ***Id***.

---

[3] In contrast, the comparable language in connection with the notary's signature is: "In witness wherof, I hereunto set my hand and official seal."

(emphasis added). In other words, when the Golds executed the mortgage, they evidenced the present intention to create an instrument under seal, with no further action required.

Our conclusion that the mortgage is constructively a sealed instrument is supported by another recent decision of this Court. In **Valley Nat'l Bank v. Marchiano**, 221 A.3d 1220 (Pa.Super. 2019), a case that also involved a mortgage, there was no seal apparent on the document in connection with the mortgagors' signatures, but the notary's acknowledgement indicated that they had signed and sealed the document. **Id**. at 1223. Relying upon **Lorah**'s pronouncement that sealing had become constructive rather than actual and was a function of the parties' intent, we concluded that the instrument was constructively under seal and subject to the twenty-year statute of limitations. **Id**.

Accordingly, we find no merit to the Golds' claim that the trial court erred in holding that the mortgage was an instrument under seal. As such, the trial court correctly concluded that NLI's action to foreclose on the mortgage was timely filed, and the Golds are entitled to no relief from this Court on that basis.

---

Complaint, 8/28/17, at page 17 of Exhibit C. This expression of an intent to perform an additional act is followed by an embossed and stamped notarial seal. **Id**.

- 10 -

In their remaining issue, the Golds argue that NLI lacked standing to bring a foreclosure action upon the mortgage. They observe that the note which was secured by the mortgage was not under seal such that the statute of limitations barred its enforcement. The Golds' brief at 31. Since Pennsylvania law provides that a mortgage "can have no separate existence" from the note which it secures, and a plaintiff "must have the right to enforce the note" to have standing to foreclose on the mortgage, the Golds contend that NLI's inability to enforce the note deprived it of standing. *Id*. at 32 (citing, *inter alia*, **CitiMortgage, Inc. v. Barbezat**, 131 A.3d 65, 68 (Pa.Super. 2016)).

We begin our analysis with some general legal observations. The Golds are correct that a mortgage is a security instrument to ensure payment of the note. **See Barbezat**, **supra** at 68. "When a note is paid, the mortgage expires." **Id**. Conversely, "[t]he lien of a mortgage continues until the mortgage debt is paid." **Beckman v. Altoona Tr. Co**., 2 A.2d 826, 828 (Pa. 1938).

When the borrower defaults on payments, "[t]he holder of a mortgage note can decide whether to file a foreclosure action or to file an *in personam* assumpsit action on the note[.]" **Nicholas v. Hofmann**, 158 A.3d 675, 696 (Pa.Super. 2017). In either event, the party prosecuting the action must be the real party in interest. **See** Pa.R.C.P. 2002(a). In a mortgage foreclosure action, the real party in interest is the mortgagee. **See Gerber v. Piergrossi**,

- 11 -

142 A.3d 854, 859 (Pa.Super. 2016). "The foreclosing party can prove standing either by showing that it (1) originated or was assigned the mortgage, **or** (2) is the holder of the note specially indorsed to it or indorsed in blank." *Id*. at 859-60 (emphasis in original, internal quotation marks omitted). When proceeding on the mortgage instrument, the mortgagee must nonetheless also have "the right to make demand upon the note secured by the mortgage." *Barbezat*, *supra* at 68.

Our precedent merely requires that the mortgagee "own or hold the note." *MB Fin. Bank v. Rao*, 201 A.3d 784, 790 (Pa.Super. 2018). The Golds have not cited, nor have we found, any authority to suggest that the mortgagee in a foreclosure action must establish not only the right to make a demand upon the note, but that an action to enforce the note would survive a statute-of-limitations defense.

Indeed, Pennsylvania courts have long held that the statute of limitations extinguishes only the right of action on a debt, and not the underlying debt itself, such that "[t]hough a note may be barred by the statute of limitations from recovery in an action against the maker, collateral given as security for its payment may still be applied to the note." *In re Anthracite Tr. Co. of Scranton*, 36 A.2d 727, 729 (Pa.Super. 1944). *See also Brackenridge v. Cummings*, 18 Pa.Super. 64, 68 (Pa.Super. 1901) ("[W]hile action on the notes may be barred, the right of action on the mortgage continues until the debt is paid or extinguished.").

Accordingly, the fact that the statute of limitations had expired for NLI to obtain an *in personam* judgment against the Golds on the note has no impact upon NLI's standing to obtain an in rem judgment against the collateral that secured the unpaid debt. The Golds' final arguments warrant no relief.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/13/20